C. W. Stringer et al. v. Franklin County.

Decided December 23, 1909.

**1.—Practice on Appeal—Agreed Case.**

An agreed case showing the points of law ruled below and of which appellant complains, though not limiting the appellate court from considering other facts in the record sustaining the judgment, is taken as a waiver by appellant of objections not involved in such conclusions.

**2.—Officers—Duty—Compensation.**

Where the law imposes an official duty on a county officer the Commissioners' Court has no power to delegate that duty to another or to provide by contract compensation to such other person for its performance.

**3.—Same—County—Contract—Delinquent Taxes.**

The statute (Revs. Stats., art. 5232c, Act of April, 1897, Laws 25th Leg., p. 132, sec. 3) making it the duty of the Commissioners' Court to cause to be prepared by the tax collector a "Delinquent Tax Record," compensation for making same to be fixed by such court, did not impose that labor upon the tax collector as an official duty. Where the Commissioners' Court provided by contract with another than the tax collector for the preparation of such list and received the benefit of the work done by him, the county became liable to compensate him therefor.

**4.—Same—Collection of Taxes.**

The Commissioners' Court could not barter away the county's source of revenue by contract with reference to collection of delinquent taxes, giving to the party performing such service the entire delinquent county tax recovered.

**5.—Same.**

Delinquent county taxes, where recovered, are required to be paid over to the treasurer and appropriated in his hands to the funds maintained for specific purposes, and the Commissioners' Court had no power to interfere with the operation of these laws by a contract appropriating such funds as compensation to be retained by the person collecting them.

**6.—Same.**

The county tax collector has by law the duty and authority of collecting its taxes. A contract by the Commissioners' Court with another, that, as compensation for preparing a delinquent tax roll, he should collect and retain certain delinquent taxes, could not entitle him, when the county rescinded the contract, to such taxes afterward collected by the tax collector.

**7.—Pleading—Quantum Meruit.**

One seeking recovery on quantum meruit must allege the value of his services. Allegation and proof of what plaintiff would have realized under

the contract by its performance will not support recovery on quantum meruit in case he was not entitled to the compensation agreed on.

### 8.—County Attorney—Collection of Taxes.

The county attorney being charged with the official duty of assisting the tax collector in the collection of delinquent taxes, the Commissioners' Court had no power to contract with him for a compensation for doing such service.

### 9.—County—Presentation of Claims.

A claim for the value of services rendered a county in preparing its "delinquent tax record" cannot be sued on without being first presented to the Commissioners' Court for allowance. A resolution repudiating plaintiff's contract which provided an agreed compensation was not equivalent to a presentation and rejection of his claim for reasonable value for his services.

### 10.—Harmless Error.

Where the judgment rendered is the only one allowable under the facts, errors of the court in the conclusions of law on which it was based are not ground for reversal.

Appeal from the District Court of Franklin County. Tried below before Hon. P. A. Turner.

*W. L. Tittle,* for appellants.—The Commissioners' Court of Franklin County, by virtue of their general powers to audit, adjust and settle all accounts and claims in favor of the county and to supervise and control the financial affairs of the county, were authorized to enter into the contract with appellants of date of August 12, 1903, as also the contract with appellant, C. W. Stringer, of date August 31, 1906. Sayles' Stats., article 1537; City National Bank of Austin v. Presidio County, 26 S. W., 776; Anderson v. Walker, 49 S. W., 947; Galveston County v. Ducie, 91 Texas, 670; Grooms v. Atascosa County, 32 S. W., 188.

The Commissioners' Court of Franklin County were expressly authorized and empowered by law to enter into contracts set out herein for the compilation of the delinquent tax record of said county, and for the enforcement of the collection of said taxes; and the Commissioners' Court not only had authority to do this, but it was made the duty of the said court to do so. The appellee, Franklin County, having employed appellants to do a specific work, and having repudiated the contract and prevented appellants from collecting their compensation, and having received the benefits of appellants' labor, is liable to appellants in the sum of the contract price and damages for noncompliance with the contract. Duncan v. Johnson, 59 S. W., 46; Hearne v. Garrett, 49 Texas, 619; Simpkins on Contracts, 216; Sayles' Civ. Stats., arts. 5232c, 5232i, 5232j.

*S. M. Long* and *R. T. Wilkinson,* for appellee.—The Commissioners' Court of Franklin County had no authority to make the contract sued on herein and was without authority to employ the appellants as tax ferrets and to make the contract allowing them all the county taxes as compensation. Baldwin v. Travis County, 40 Texas Civ. App., 149; Bland v. Orr, 90 Texas, 492; Wharton County v. Ahldag, 84 Texas, 15; State v. Wolfe, 51 S. W., 657; Sayles' Statutes, arts. 5232a to 5232q; Constitution of Texas, art. 3, sec. 55; Stevens v. Henry County, 4 L. R. A. (N. S.), 339.

HODGES, ASSOCIATE JUSTICE.—This suit was instituted by the appellants, C. W. Stringer and J. E. Mattinson, against Franklin County, in 1907. The case was tried upon the amended petition of 1909. The nature of the suit can be best stated by giving in substance the pleadings of the parties.

The appellants allege that on the 12th day of August, 1903, they entered into a contract with the county of Franklin, through the Commissioners' Court, by which they were employed by the county to compile the delinquent tax record provided for by the Act of the Twenty-Fifth Legislature known as the Delinquent Tax Act, and that by the terms of that contract they undertook at their own expense the duty of collecting all the necessary data and of preparing the delinquent lists in conformity to the requirements of the law referred to. They also allege that they were authorized by that order to institute suits in the name of the State, or of Franklin County, for the recovery of any taxes that might be due from delinquents. prior to that time. As compensation for their services they were to collect and retain all of the delinquent taxes shown by their delinquent lists to be due to the county. They allege the performance of the duties undertaken by them, the compilation of the work, and the acceptance by the court of the lists which they had compiled. This they say was done in 1904. They also allege that at that time there was a portion of the roadbed belonging to the St. Louis Southwestern Railway Company of Texas situated in Franklin County, upon which taxes had never been paid; that by virtue of their contract with the county they caused that portion of the roadbed to be assessed, and C. W. Stringer, who was county attorney at the time, on the 15th of April, 1904, instituted suit to recover from the railway company such delinquent taxes. The suit terminated in a judgment in behalf of the county for the sum of $300. It is further alleged that in August, 1906, the Commissioners' Court of Franklin County passed and entered an order employing the appellant Stringer to bring the delinquent tax record down to that date by compiling a supplemental delinquent tax record in addition to that which had theretofore been compiled by Stringer and Mattinson, said supplemental record to include the years 1903 to 1905. The contract also authorized Stringer to collect the delinquent taxes due the county as shown by this delinquent tax record, allowing him as compensation ten per cent. of all of the county taxes collected which had become delinquent after August 12th, 1903. Appellants further allege the performance of this work by Stringer, and its acceptance and approval by the Commissioners' Court of Franklin County. It is alleged that on the 11th day of December, 1906, the Commissioners' Court entered an order repudiating the contracts theretofore entered into with Stringer and Mattinson; that by reason of that repudiation the appellants were prevented from carrying out their part of the contract which provided for the recovery of their fees and compensation. Appellants claim that they were entitled to $300 collected by the suit against the railway company before mentioned. It is charged that had they not been prevented by Franklin County from so doing they could have realized for their part out of the delinquent taxes, over and above all expenses, the sum of

$1,000. It is further alleged in the petition that the services in preparing the delinquent tax records before mentioned were rendered by the appellants at the special instance and request of the Commissioners' Court acting for Franklin County; that the records were beneficial and useful to the county, and are now in use by the department of the Comptroller of Public Accounts of Texas. Wherefore they pray that if they are not permitted to recover upon the previous allegations, that they be allowed judgment for such amount as will reasonably compensate them for their time and labor. It is also alleged that at the called session of the Commissioners' Court, December 11, 1906, an order was entered employing counsel for the purpose of restraining appellants from collecting any taxes under their contracts, including the judgment for $300 before mentioned, and caused a suit to be instituted in the County Court seeking to enjoin the appellants from collecting the aforesaid taxes; that they were so enjoined from making such collections, and the railway company enjoined from paying over to them any part of the $300 due upon the judgment. But it is further alleged that the judgment of the County Court restraining them from collecting the delinquent taxes had been appealed and the same was reversed and dismissed; that during the pendency of the suit the $300 mentioned was paid into court, but since the determination it had been appropriated by Franklin County to its own use and benefit. They pray judgment in the aggregate sum of $1,300.

Franklin County answered by general and special exceptions, general denial and special defenses setting up the want of authority on the part of the Commissioners' Court to enter into the contracts made the basis of the appellants' cause of action.

The case was tried before the court, no jury having been demanded; and after hearing the evidence, a judgment was rendered in favor of the appellee. There were no conclusions of fact and law filed, and none demanded. But there is incorporated in the record, immediately following the judgment, the following agreement of counsel:

"It is hereby agreed by and between the parties hereto that the judgment rendered for the defendant herein has the effect of holding:

"1st. That the contract between plaintiffs and defendant county, of date August 12th, 1903, and found on page 1, Statement of Facts, was without authority of law and void.

"2nd. That the contract between C. W. Stringer and defendant county, to be found on page 5, Statement of Facts, was without authority of law and void.

"3rd. That the defendant county could not be held liable to plaintiffs on a quantum meruit.

"It is hereby agreed that this case upon appeal may be decided upon this agreed statement of the issues of law involved, and determined accordingly.

"W. L. Tittle,
"Attorney for Plaintiffs.
"R. T. Wilkinson,
"Attorney for Defendant."

"The above and foregoing agreed statement of the issues of law in-

volved in this case, signed by all the parties thereto having been examined by me is found in all things correct and is hereby approved and ordered filed as part of the record in this case.

"This April 19th, A. D. 1909.

"P. A. Turner,
"Judge of the District Court of Franklin County, Texas."

While we do not think this agreement, although approved by the trial court, should have the effect of limiting us in our consideration of the issues of law and fact presented in the record to which we might look for support of the judgment rendered in the case, still we may regard it as indicating the legal conclusions which actuated the court, and as a waiver on the part of the appellants of any other objections not involved in such conclusions. In the main the allegations in the petition were sustained by the evidence.

The contract of August, 1903, referred to in the appellants' petition, is as follows:

"In the Matter of Delinquent
Taxes of Franklin County.

"Wednesday, August 12, 1903.
"On this day came on to be heard the propriety of having the delinquent tax record of Franklin County made out, as required by the 'Colquitt Act,' and it appearing to the Court that said record should be made:

"It is hereby ordered by the Court that C. W. Stringer and J. E. Mattinson be and they are hereby authorized to make the delinquent tax record for said county in compliance with law, and to institute all suits and proceedings in the name of the State of Texas or Franklin County necessary to foreclose the tax lien on land, and to collect all taxes, penalties and interest that are now delinquent and due to said county; that said C. W. Stringer and J. E. Mattinson are to assume all expenses of every character in order to complete said delinquent tax record and to collect said delinquent taxes, and as compensation shall be entitled to retain for their services all moneys by them collected on any taxes which are now delinquent on land in said county, after they have paid to the State the State taxes which they may collect, provided that this shall not apply to the delinquent taxes nor costs now involved in the suit between the St. Louis S. W. Ry. Company of Texas and Franklin County."

It is contended by counsel for appellee that the statute had designated the tax collector as the person whom the Commissioners' Court should employ to perform the service of preparing the delinquent lists which should thereafter compose what is known as the "Delinquent Tax Record," and that the court was without authority to delegate that duty to another, or to contract with another for its performance. It seems to have been the purpose of the Act of 1907, known as the "Delinquent Tax Act," as stated in its caption (1) to provide for the collection of taxes theretofore and thereafter levied; (2) to make such taxes a lien on the land taxed; (3) to establish and continue that lien; (4) to provide for the sale and conveyance of lands delinquent

for taxes since 1885 which had been returned delinquent and reported sold for taxes and which had not been redeemed. In order to carry into effect the provisions and purposes of this Act the Legislature deemed it necessary that the data which should form the basis of suits authorized by this Act to be instituted for the collection of delinquent taxes should be collected in some convenient and authentic form. Art. 5232c of the Revised Civil Statutes, which is the same as sec. 3 of the Act of 1897, provides: "It shall be the duty of the Commissioners' Court of each county in this State immediately upon the taking effect of this chapter to cause to be prepared by the tax collector, at the expense of the county (the compensation for making out the delinquent tax record to be fixed by the Commissioners' Court), a list of all lands, lots, or parts of lots sold to the State for taxes since the first day of January, 1885, and which have not been redeemed, in their respective counties, and unorganized counties attached thereto, and to have such lists recorded in books to be called the "Delinquent Tax Record," etc. We may concede the correctness of the general proposition, that when the law imposes upon an officer the performance of certain acts as a part of his official duties the Commissioners' Courts of the different counties are without authority to contract with any other person to perform those services, or to in any manner transfer that official duty to any other person than that named in the law. It is equally true that when the law has fixed the compensation which an officer shall receive for given services, or when it has imposed upon him the duty of performing a service without specifically fixing any compensation therefor, he can not contract to receive from other sources any additional compensation for doing his official duty. But this statute provides that for the performance of this particular service the county shall make compensation. The county was, therefore, authorized to contract for, or to fix, as termed by the Act, the compensation to be paid. The question then is, was the county limited in the persons whom it might contract with, or employ, to perform this work, to the tax collector? In other words, did this Act make it a part of the official duty of the tax collector to prepare those delinquent lists? Or did it merely empower the Commissioners' Court to make it a part of his official duty? An affirmative answer to the latter question would not necessarily imply the same answer to the first. If the statute intended, or had the legal effect, to make the preparation of those lists a part of the official duty of the tax collector, and also made it the duty of the Commissioners' Court to "cause" him to perform it, it follows that it would, upon the taking effect of the law, have become his duty to proceed with the work without any action on the part of the Commissioners' Court in that respect. If this was the intention of the statute, then this purpose could have been made plain by the use of much less verbiage than was used. We rather incline to the opinion that in this instance the words actually employed are such a departure from those which would naturally have been used, if such had been the intention of the Legislature, that we may infer that no such intention existed. The question may then be asked, why did the law make it the duty of the Commissioners' Court to cause the tax collector to perform this work? The significance of this question may be met in

part by the observations we have just made. If such was the intention, why did not the law so state without the circumlocution actually employed? If the law imposed the duty, then why require the Commissioners' Court to cause him to do it? We think the purpose of the statute was to empower the Commissioners' Courts of the different counties to require this work to be done by the tax collector, for the reason that the records from which the data were to be collected were mainly in his custody, and naturally he would be the person who could most conveniently and accurately compile it. But it did not become his duty till its performance was demanded by the Commissioners' Court. It was not one of the governmental functions annexed to his office, but the performance of a purely clerical service. It was not the doing of some acts which in themselves were thereafter to form a public record, or the making of a public record *de novo,* but the collection of data from pre-existing records. The lists when completed did not acquire any legal sanctity by reason of having been prepared by him; no authentication was required from him, neither was the work to be taken as *prima facie* correct. After their preparation the lists were to be filed with the county clerk and by him certified to the Commissioners' Court. This body was then required to examine the lists and make such corrections as were necessary, after which they were to be published, and then recorded in a book called "The Delinquent Tax Record" in the office of the county clerk. Again, this work was to be done but once. A somewhat new system of procedure for the collection of delinquent taxes was inaugurated by this Act, and provision was made for preserving lists of lands reported delinquent in the future. The fact that the work was to be done but once furnishes to us very cogent reasons for holding that it was not an official act which could only be performed by the tax collector. Let us suppose that in Franklin County a suit had been brought by the proper authority for the collection of some portion of the taxes shown to be delinquent on the lists prepared and furnished by the appellants, and that in all other respects the law had been literally complied with, would it be any defense upon the trial of such a suit that the original delinquent lists had been prepared and furnished by one other than the tax collector? We think not. If it would not, then the county had received in the preparation of such lists by the appellants a benefit which the law contemplated should be paid for by it. We have therefore concluded that the Commissioners' Court had the power under the provisions of this law to contract with some person other than the tax collector for the performance of this service. We can see no reason why this could not be done, in view of the fact that the service to be performed can not, in any sense, be regarded as the exercise of any of the governmental functions attached to a public office.

But we do not mean to be understood as holding that the appellee had the legal authority to make this particular contract. There are other objections to be considered. The compensation allowed by this contract awards to the appellants for their services the right to themselves collect and retain all that portion of the taxes shown on those delinquent lists to belong to the county. Such a proceeding was not only an attempted transfer of the official duty of the tax collector in

collecting delinquent taxes, but it was an effort to barter to private individuals the county's sources of revenue. Neither of these could the Commissioners' Court do. The duty of the tax collector to collect all taxes due the county and the State is so well settled that it is unnecessary to refer to the specific provisions of the law on that subject. That this duty is one of the important governmental ministerial functions which he alone can exercise, we think is too plain to be disregarded. Therein lies the distinction between the collection of taxes and the preparation of the delinquent lists. The service contemplated in the latter instance may be performed by another, because it is not in the exercise of some governmental function; and can not be exercised by another in the first instance, because it would be the exercise of a governmental function and is nontransferable.

The law has not only provided certain methods for collecting the revenues paid in taxes, but has formulated a well-balanced system for their disbursement. All taxes, whether current or delinquent, are first to be paid to the tax collector, and by him, at certain stated periods, paid over to the treasurer, and by the latter paid out upon the proper orders of those designated by law. This system was devised and is adhered to for the purpose of maintaining an orderly and economical administration of the fiscal department of the county government, and to furnish a check against unwise and corrupt practices by those entrusted with the custody and expenditure of the public funds. When collected the revenues of a county are divided by law into specific funds, which are to be expended in the payment of claims according to their classification with reference to such division. There are what are called the general county fund, the road and bridge fund, and where a county has a bonded indebtedness there is also an interest and sinking fund. In settlements between the collecting and disbursing officers of the county, and in the reports that are to be made to the auditing and inspecting departments, the distinction between these funds is required to be observed. Each claim against the county must be paid out of that fund to whose class it properly belongs. It is true that the Commissioners' Courts may, in some instances, transfer money from one fund to another; but the law contemplates that this shall be done before money standing to the credit of one fund shall be applied to the payment of claims forming a charge against another. Claims against a county are required by law to be paid in the order in which they are presented, and for that purpose the treasurer is required to keep a book in which all claims allowed shall be registered as presented. If the county Commissioners' Court can be permitted to dispose of its revenues in advance of their collection in the manner attempted in this instance, they can easily use that method as a subterfuge for giving preference to one claim holder over another. If they may contract to pay for the preparation of a delinquent tax record by such an agreement, they can also contract in the same way to pay for bridges and other public improvements; in fact, may settle any debt by the same method. It requires but little reflection to discover the confusion that would inevitably result from the adoption of such a system.

We think the Commissioners' Court of Franklin County were without authority to make the agreement empowering the appellants to col-

lect and retain the delinquent taxes due the county. While possessing the authority to fix. the compensation which appellants might receive, to be paid out of taxes after their collection, it could not assign to them in advance of their collection the taxes due from any particular class of individuals, or for any particular years.

But if we should accept as correct the argument of the appellants, that this feature of the contract is valid and within the power of the Commissioners' Court, it still leaves their suit without merit. For if the court had this authority, the contract had the legal effect of assigning absolutely to the appellants all the claims and liens which the county had against those lands and lots included in the lists incorporated in the delinquent tax record. The service of preparing the lists having been performed, the contract between the county and the appellants was executed. The subsequently attempted rescission by any other Commissioners' Court would be ineffectual to destroy the rights of the assignees, and for that reason the county could not be held liable on account of such rescission. If this contract was valid the appellants had received their compensation from the county by the assignment of the taxes. There remained no contract to be broken. The Commissioners' Court has no control over the collection of taxes; that duty devolves upon others. The chance of collecting the delinquent taxes assigned to appellants was assumed by them. If the collector of taxes interfered and asserted his legal right to collect them the county could not under any theory of the case be held liable for more than had been appropriated by it. There is neither pleading nor proof that would justify a judgment against the appellee for any sum, under that construction of the contract.

But assuming that the consideration agreed upon in the order relied on was in excess of the authority of the Commissioners' Court, and for that reason unenforceable; it does not necessarily follow that under proper pleading and proof the appellants would not be entitled to recover some compensation for their work. The statute authorizes the Commissioners' Court to fix the amount to be paid in such cases. If that which they in this instance did fix was unlawful, then the parties are in the position of none having been fixed, and that duty still remains to be performed by the court. If we regard the subsequent action of the court as a refusal to fix any, then we think the appellants would be entitled to recover what their services were reasonably worth. There is a portion of the petition which asks for a quantum meruit, in the event appellants were not entitled to a recovery under their contract. But they have failed to allege the value of their services. The statement of the amounts which appellants might have realized under their contract if they had been permitted to collect the taxes is not the statement of the value in the action for a quantum meruit.

The second contract referred to in the appellants' petition was made with Stringer alone, Mattinson being at the time County Judge of Franklin County. It is alleged that by the terms of this contract Stringer was engaged to compile a supplemental delinquent tax list, to include the years 1903, 1904 and 1905; in other words, to bring down to that date the work undertaken by him and Mattinson in 1903. There is also this additional clause in that contract: "This contract

to supersede the one shown by order of August 14, 1906, Vol. E, page 459, Commissioners' Minutes, which is rescinded. The Court deeming it absolutely necessary to employ said C. W. Stringer or some other competent person for the purposes herein stated and further especially stated in section six of chapter 130, Acts of the 29th Legislature, hereby agrees to pay C. W. Stringer ten percent of all such taxes collected and paid to the collector of taxes in Franklin County, and in case of absolute necessity for C. W. Stringer to prosecute suits to collect said taxes and to pay for reports of an abstract company as to the owner of property assessed as unknown or unrendered and as to the holder of any liens against the same, he is to receive fifteen percent additional of such taxes sued for and collected and paid to the collector." There does not appear to be any claim in this suit for compensation for services performed, other than the bringing down to date of the supplemental delinquent list. We are inclined to think, as before stated, that no such authority is given the Commissioners' Court as is here contended for. Art. 5232j of the Revised Civil Statutes seems to have provided a means for preparing and preserving lists of delinquents subsequently occurring. This last contract was an evident attempt to conform to the provisions of the Act of 1905 (see Acts of 1905, p. 318), providing for the assessment and collection of taxes in certain cases. Sec. 6 of this Act provides: "If the Commissioners' Court of any county in this State shall deem it expedient to contract with any person to enforce the collection of any delinquent State or county taxes, or to make up a list of properties referred to in this Act, and to enforce the collection of taxes thereon for a percent of the taxes, penalty and interest actually collected and paid to the collector of taxes, the State Comptroller shall be authorized to join in said contract and allow the same percent for State taxes that is contracted to be paid by the Commissioners' Court for the collection of county taxes, which shall not exceed ten percent, except in case of absolute necessity to employ an attorney to push the filing and prosecution of tax suits, and to pay for report of an abstract company as to the owner of property assessed as unknown or unrendered, and as to the holder of any liens against the same, in which case fifteen percent additional may be allowed." By a subsequent provision it is made the duty of the county attorney to actively assist the person with whom the county may contract to enforce the collection of the delinquent taxes for a percentage thereof. The county attorney would therefore be excluded from the benefits of this contract. There are allegations in the petition, and evidence in the record, which indicate that Stringer was at the time of making both of the contracts relied upon the County Attorney of Franklin County. If that be true he would not be entitled to any compensation, and Mattinson does not claim any.

Having reached the conclusion that the only compensation which the appellants were entitled to recover for their services in preparing the delinquent lists for Franklin County is the value of their services, or such a reasonable sum as the Commissioners' Court may provide, there still remains an insuperable obstacle in the way of their recovery in this suit. Art. 790 of Rev. Civ. Statutes provides that no county shall

be sued unless the claim upon which such suit is founded shall have first been presented to the county Commissioners' Court for allowance, and such court shall have neglected or refused to audit and allow the same or any part thereof. If the appellants held a claim against the county for the value of their services in preparing the delinquent lists, it was required of them, before entering suit, to present their claim to the Commissioners' Court of Franklin County for allowance. In view of this legal requirement, it is essential in suits against counties that the petition should allege and the proof should show that this provision of the law had been complied with and that the court refused or neglected to audit and allow the claim or any part thereof. Hohman v. Comal County, 34 Texas, 37; Powder River Cattle Co. v. Custer County, 9 Mont., 153, 22 Pac., 386; Bell County v. Flint, 91 S. W., 329; 11 Cyc., 602; 4 Am. & Eng. Pl. and Prac., 658; 5 idem, 296. In this case it was neither alleged nor proven that a claim for any sum was presented to the Commissioners' Court of Franklin County for allowance. The order relied upon as a rescission of the former orders made by the court in 1903 and 1906 is not sufficient to show a refusal to allow any sum for compensation to the appellants on their work. The order seems to have been intended merely as a direction to the tax collector to institute a suit against the St. Louis Southwestern Railway Company of Texas to restrain it from paying over to the appellants the sum of $300 due on a judgment for delinquent taxes, and a suit against the appellants for the purpose of collecting from them all taxes in excess of twenty-five percent that had been collected by them under the former contract with the county. These directions were without any legal effect whatever. Stringer v. Holley, 47 Texas Civ. App., 632, 105 S. W., 1146. The testimony shows that the restraint temporarily imposed by this action was subsequently removed by the dismissal of the suit on appeal.

Notwithstanding the trial court may have erred in some of his legal conclusions, if he rendered the only judgment that could have been rendered under the pleading and evidence in the case the judgment should be affirmed. The judgment is accordingly affirmed.

*Affirmed.*