**CHEROKEE COUNTY et al. v. ODOM, Tax Collector.  (No. 3424.)**

Court of Civil Appeals of Texas. Texarkana. July 22, 1927.

Rehearing Denied Sept. 8, 1927.

1. **Taxation** ⬡310—Constitutional designation of duties of officials for assessing and collecting ad valorem taxes covers entire field and is exclusive.

Constitution provides complete system for assessing and collecting ad valorem taxes on property, leaving no place for any other officers, and its designation of official duties is exclusive; the Legislature has no power to remove the duties or to create other agents to perform them independently of regular officials.

2. **Counties** ⬡133—If making of abstract of property delinquent for taxes is county business, it must be compensated from county funds, not state funds (Const. art. 3, § 50).

If services under contract to make complete abstract of property assessed or unknown and unrendered for taxation, on which taxes were delinquent, was county business, that is, something which may be imposed on county as part of duty to state government, services must be compensated from county funds, not from state funds, even though the state be incidentally benefited, under Const. art. 3, § 50.

3. **States** ⬡130—County cannot use state's share of delinquent taxes to pay for abstract of property delinquent for taxes because Constitution requires appropriation from treasury to be by law, and power cannot be delegated; "in treasury" (Const. art. 3, §§ 44, 48, art. 8, § 6, art. 5, § 18; Rev. St. 1925, arts. 7335, 7344).

If making of abstract of property delinquent for taxes should be compensated from state funds alone, county cannot pay therefor with state's share of delinquent taxes which shall be collected, notwithstanding Rev. St. 1925, arts. 7335, 7344, in view of Const. art. 5, § 18, but Legislature itself must appropriate money, under article 3, §§ 44, 48, and article 8, § 6, prohibiting drawing money from treasury, except pursuant to appropriation by law, since money is "in treasury" when collected and in hands of lawful custodian for state, and what must be done by law cannot be delegated by Legislature.

4. **States** ⬡131—Prohibition against drawing money from treasury except pursuant to appropriation by law requires only law authorizing expenditure and limiting amount (Const. art. 8, § 6).

Const. art. 8, § 6, providing that no money shall be drawn from the treasury but in pursuance of specific appropriations made by law, does not require the formal method common in appropriation bills, but it is sufficient, if an appropriate law authorize the expenditures and fix some limitaton on the amount.

5. **Evidence** ⬡23(1)—Courts might take cognizance that many millions of dollars were due state in delinquent taxes.

Judicial notice might be taken that many millions of dollars were due the state in the form of delinquent taxes.

Error from District Court, Cherokee County; C. A. Hodges, Judge.

Action by Cherokee County and others against A. R. Odom, Tax Collector. To review a judgment for defendant, plaintiffs bring error. Affirmed.

W. M. Harris, of Dallas, A. B. Chandler, of Rusk, Lightfoot, Robertson & Scurlock, of Fort Worth, and Perkins & Perkins, of Rusk, for plaintiffs in error.

Claude Pollard, Atty. Gen., H. Grady Chandler and Galloway Calhoun, Asst. Attys. Gen., for defendant in error.

HODGES, J. On September 15, 1926, the commissioners' court of Cherokee county and Byron A. Jordan and R. C. Nelson, doing business under the partnership name of the Standard Engineering & Plat Book Company, filed this suit against the defendant in error, Odom, tax collector of Cherokee county. The material portions of the petition are as follows:

"Plaintiffs represent that on the 15th day of December, A. D. 1925, the said Cherokee county, acting by and through its commissioners' court, entered into contract with the Standard Engineering & Plat Book Company, a copartnership aforesaid, for the preparation by it for Cherokee county of an abstract of property assessed, or unknown and unrendered, as provided by chapter 21, Acts of the Third Called Session of the Thirty-Eighth Legislature 1923 (R. S. 1925, art. 7335), wherein and whereby the said Standard Engineering & Plat Book Company were and are to receive 33⅓ per cent. of all state and county delinquent taxes, penalties, and interest delinquent from January 31, 1908, to and inclusive of February 1, 1926, and the said state of Texas, acting by and through said commissioners' court, which court was and is duly authorized to act in said matter, was obligated to pay to the said Standard Engineering & Plat Book Company 33⅓ per cent. of the state delinquent taxes, penalties, and interest for the period of time aforesaid, said contract aforesaid being of record in the minutes of the commissioners' court of Cherokee county, in Book H, on page 400 et seq., a certified copy of which contract is hereto attached, marked Exhibit A, and made a part hereof as though fully set out herein; that for the purpose of a specific understanding between the parties to said contract, and for the purpose of more clearly expressing the intent and purposes of the parties to said contract, said county of Cherokee, acting by and through its commissioners' court, and the said Standard Engineering & Plat Book Company, entered into supplemental agreement on the 9th day of August, A. D. 1926, wherein and whereby said 33⅓ per cent. of said delinquent taxes, penalties, and interest obligated to be paid to the said Standard Engineering & Plat Book Company was declared to be in part compensation of said Standard Engineering & Plat Book Company for the making and furnishing of an abstract of property assessed, or unknown and unrendered, and for no other purposes, all of which compensation was and is contingent upon the collection of said taxes, penalties, and interest, a certified copy of which supplemental contract is hereto attached, marked Exhibit B, and made a part hereof as though fully set out herein.

"Plaintiffs represent that the said county tax collector, defendant herein, though often requested and directed by the commissioners' court of Cherokee county, and by the other plaintiffs herein, to set aside and to pay over to the Standard Engineering & Plat Book Company the state's portion of said delinquent taxes, penalties, and interest, to wit, 33⅓ per cent. thereof, has failed and refused so to do, but, on the contrary, has made his monthly report to the comptroller of public accounts of the state of Texas, including the said 33⅓ per cent. of said delinquent state taxes, penalties, and interest, which the said state of Texas is obligated to pay to the plaintiff Standard Engineering & Plat Book Company, and has remitted the amounts in said reports to the state treasurer for credit on his account, and though said tax collector, defendant herein, has recently been requested and directed to pay over to said Standard Engineering & Plat Book Company said 33⅓ per cent. of the state's part of said delinquent taxes, penalties, and interest, as aforesaid, he has failed and refused so to do, and has notified the Standard Engineering & Plat Book Company, in writing that he would continue to refuse to make such payments, a copy of which writing is hereto attached marked Exhibit C, and made a part hereof.

"Plaintiffs represent that at the end of the month of January, February, March, April, May, June, and August of the year 1926 the tax collector has made and filed his monthly reports with the said comptroller of public accounts of the state of Texas, showing the delinquent state taxes, penalties, and interest collected for the period of time as hereinbefore alleged, which amount, in the aggregate, is the sum of $8,533.56, and has remitted to the state treasurer all of said amount of state delinquent taxes, penalties, and interest, shown in said reports to have been collected, 33⅓ per cent. of which was due to be paid by the said tax collector, defendant herein, to the said plaintiff Standard Engineering & Plat Book Company to plaintiff's damage in the sum of $2,844.52. A certified copy of defendant's said report for the months aforesaid is hereto attached, marked Exhibit D, and made a part hereof as though fully set out herein."

The petition asked for a writ of mandamus compelling the tax collector to pay over to the Standard Engineering & Plat Book Company the amount of money claimed to be due under the contract, and for a writ of injunction restraining him from paying the state's portion of the delinquent taxes collected into the state treasury.

Upon application a temporary restraining order was granted in vacation, which remained in force till the regular term of the district court following. In addition to a motion to dissolve the temporary order, the Attorney General, representing the tax collector, filed a general demurrer and a general denial. Upon a hearing the temporary order was dissolved and the general demurrer to the petition of plaintiffs in error was sustained.

The contracts referred to were attached as exhibits to the original petition. The first provided, in substance: (1) The Standard Engineering & Plat Book Company agreed to make a complete abstract of property assessed, or unknown and unrendered, for the purposes of taxation, upon which taxes were delinquent. The abstract was to cover all delinquent taxes of every character from 1908 to and including February 1st next preceding the completion of the abstract. As compensation for these services, and for furnishing to the officers of Cherokee county all necessary information to assist and aid them in the collection of delinquent taxes in the manner described, the county agreed to pay 33⅓

per cent. of the delinquent taxes, penalties, and interest collected from and after the date of the contract. (2) The Standard Engineering & Plat Book Company agreed to prepare the abstract and make a complete map and plat system for Cherokee county showing each tract, lot, or parcel of land in the county. (3) It was further agreed that, in order to enable the Standard Engineering & Plat Book Company to finish the work of preparing the abstract and map and plat system, there should be issued to them from time to time, on the first day of each regular term of the commissioners' court of Cherokee county, such amount of warrants in the denomination of $500 each equal to 10 per cent. of the one-third payable out of the delinquent taxes that might be collected, not to exceed 20 per cent. of the total amount of taxes certified to be delinquent.

The material portions of the supplemental contract referred to are as follows:

"It is agreed by and between the said parties to said contract that the compensation to be paid said Standard Engineering & Plat Book Company for said services and work shall be as follows: For making and furnishing the plat book called for in said contract a sum equal to 33⅓ per cent. of the county general fund delinquent taxes, penalties, and interest for the years 1908 to and including 1926, collected, and contingent upon the collection of the same; and, for the services and work of making and furnishing the said abstract of property assessed, or unknown and unrendered, called for in said contract a sum equal to 33⅓ per cent. of all other delinquent state and county taxes, penalties, and interest collected for the years 1908 to 1926, inclusive, and contingent upon the collection of the same; said compensation in both cases to be paid out of the delinquent taxes, penalties, and interest collected, so that the said contract, as heretofore executed, be and the same is hereby ratified and altered accordingly, but is not in any way changed executed except in the particulars stated."

For the purposes of this appeal it is admitted that the contract alleged was properly executed, and that the services contracted for had been performed. It is also admitted that delinquent taxes covered by the terms of the contract had been collected, and that the defendant in error, as tax collector, had declared his intention to pay over to the state treasurer the state's portion of those taxes.

The sole question in this appeal is, Did the commissioners' court have the power to contract for the payment of the compensation agreed upon, or any part thereof, out of the state's portion of the delinquent taxes thereafter collected? As authorizing the making of contracts of this character the following provisions of law are referred to:

"Art. 7335. Whenever the commissioners' court of any county after thirty days' written notice to the county attorney or district attorney to file delinquent tax suits and his failure to do so, shall deem it necessary or expedient,

297 S.W.—67

said court may contract with any competent attorney to enforce or assist in the enforcement of the collection of any delinquent state and county taxes for a per cent. on the taxes, penalty and interest actually collected, and said court is further authorized to pay for an abstract of property assessed or unknown and unrendered from the taxes, interest and penalty to be collected on such lands, but all such payment and expenses shall be contingent upon the collection of such taxes, penalty and interest. It shall be the duty of the county attorney, or of the district attorney, where there is no county attorney, to actively assist any person with whom such contract is made, by filing and pushing to a speedy conclusion all suits for collection of delinquent taxes, under any contract made as hereinabove specified; provided that where any district or county attorney shall fail or refuse to file and prosecute such suits in good faith, he shall not be entitled to any fees therefrom, but such fees shall nevertheless be collected as a part of the costs of suit and applied on the payment of the compensation allowed the attorney prosecuting the suit, and the attorney with whom such contract has been made is hereby fully empowered and authorized to proceed in such suits without the joinder and assistance of said county or district attorneys. * * *

"Art. 7344. In counties in which the subdivisions of surveys are not regularly numbered, and in cities or towns in which the blocks or subdivisions are not numbered, or are so irregularly numbered as to make it difficult or impossible for the assessor to list the same, the commissioners' court of such counties may have all the blocks and subdivisions of surveys platted and numbered so as to identify each lot or tract, and furnish the assessor with maps showing such numbering; and an assessment of any property by such numbering on said maps shall be sufficient description thereof for all purposes. Such maps or a certified copy of same or any part thereof, shall be admissible as evidence in all courts. The cost of making said survey and plats shall be defrayed by the county in which said property is situated, and of which said commissioners' court ordered the said surveys and plat made and the cost of any map of a town or city shall be paid by such city or town when ordered by the town or city." Revised Civil Statutes 1925.

Plaintiffs in error concede that compensation for making the maps and plats contemplated by the contract could be paid for only from funds belonging to the county. But they contend that article 7335 authorized the commissioners' court to contract for the payment of compensation for making the abstracts from that portion of the delinquent taxes collected which belonged to the state. Counsel for defendant in error contend that, if article 7335 be susceptible of that construction, it is obnoxious to the following provision of the Constitution (section 18 of article 5), which provides:

"The county commissioners so chosen, with the county judge, as presiding officer, shall compose the county commissioners' court, which shall exercise such powers and jurisdiction over all county business, as is conferred by this

Constitution and the laws of the state, or as may be hereafter prescribed."

The argument of the Attorney General is that the manifest purpose of the framers of the Constitution was to limit the jurisdiction of commissioners' courts to strictly "county business," and that the Legislature has no authority to enlarge their powers or jurisdiction. But we shall, for the present, pass from the further consideration of that proposition to the discussion of other provisions of the Constitution which we think should first claim attention.

[1] In the organization of our state government the Constitution has made provision for the exercise of all the governmental functions regarded as essential to the welfare of the people at the present time. Numerous offices have been created, and the duties and powers assigned to each are specified with more or less detail. The Constitution provides for the election of a tax assessor in each county, to whom is committed all the duties essential to the making of an accurate and complete legal assessment of all the property within his jurisdiction that is subject to taxation. The Constitution has also provided for the election of a tax collector in each county, to whom is committed the duty of performing all the duties, other than those involved in judicial proceedings, which are necessary in the collection of taxes. It has likewise provided for the election of county and district attorneys, whose duty it is to represent the state and county in filing and prosecuting suits necessary for the collection of delinquent taxes. It thus appears that the entire field of official service required in the formation of a complete system for assessing and collecting the public revenue derived from ad valorem taxes on property has been provided for by the Constitution. There is left no place for any other employee, or agent, whose duties may not fall within the domain of some one or more of the officers which the Constitution has created. The designation of official duties assigned by the Constitution is exclusive. The Legislature has no authority to remove these from where the Constitution has placed them, nor to create other agents with authority to perform the same duties independently of the regularly constituted officials. Maud v. Terrell, 109 Tex. 97, 200 S. W. 375; Stringer v. Franklin County, 58 Tex. Civ. App. 343, 123 S. W. 1168.

[2] Article 7335 authorizes the commissioners' court "to pay for an abstract of property assessed or unknown and unrendered" from the delinquent taxes thereafter collected. The language used does not necessarily imply that such payment shall be made to one other than the official whose duty it is to make the required abstract. Nor does it necessarily imply that payment shall be made from funds belonging to the state. But the parties to this suit have construed that language as author-

izing the commissioners' court to employ agents other than the duly elected officers to whom such payment may be made. They also have construed this article as authorizing payment to be made for abstracts from that portion of the delinquent taxes collected which belongs to the state.

It is upon that construction that the Attorney General has challenged the constitutionality of article 7335. If it may be said that this article bears that construction and no other reasonable one, then it is subject to the objections which have been stated, and to others hereinafter referred to. On the other hand, if this statute may reasonably be interpreted as authorizing commissioners' courts to employ private parties as assistants to county officials in the performance of official duties, and for the payment of the necessary compensation for such services out of funds belonging to the county, it is not subject to the objections made.

But whatever may be the proper construction, the validity of the contract involved depends on the interpretation which the terms of the contract imply. The contract is based upon the assumption that the delinquent tax records of Cherokee county are defective, that the services called for are necessary to enable the county attorney to prosecute suits for the collection of delinquent taxes, and that compensation for those services shall be paid for with funds belonging to the state. The question then arises, Can the Legislature clothe the commissioners' court with such powers? We are of the opinion that it cannot. Section 44, of article 3 of the Constitution is as follows:

"The Legislature shall provide by law for the compensation of all officers, servants, agents and public contractors, not provided for in this Constitution, but shall not grant extra compensation to any officer, agent, servant, or public contractors, after such public service shall have been performed or contract entered into, for the performance of the same; nor grant, by appropriation or otherwise, any amount of money out of the treasury of the state, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law; nor employ any one in the name of the state, unless authorized by pre-existing law."

Section 48 of the same article provides:

"The Legislature shall not have the right to levy taxes or impose burdens upon the people, except to raise revenue sufficient for the economical administration of the government, in which may be included the following purposes: * * * The payment of the cost of assessing and collecting the revenue; and the payment of all officers, agents and employees of the state government, and all incidental expenses connected therewith."

Section 6 of article 8 is as follows:

"No money shall be drawn from the treasury but in pursuance of specific appropriations

made by law; nor shall any appropriation of money be made for a longer term than two years," etc.

These provisions clearly imply that the Legislature must provide by law for paying the compensation of the officers and agents of the state government. That which must be done by the enactment of a law can be done only by the Legislature, and cannot be delegated to some other body of government officials. If the services provided for in these contracts may properly be termed "county business," something which may be imposed upon the county as a part of its duty to the state government, then the compensation should be paid from funds belonging to the county, even though the state may be incidentally benefited thereby.

[3] An appropriation of the state's funds for the benefit of a county would be a violation of section 50 of article 3 of the Constitution. But if the services provided for are for the sole benefit of the state, and should be paid for from the state's funds alone, then the Legislature itself must fix the compensation and make the necessary appropriation of the state's money. This does not mean that the Legislature may not delegate to some state official the authority to select an agent, or an employee, to perform a special public service, or that the Legislature must name the specific sum to be paid as compensation for such special services. But it does mean that the Legislature must designate the fund from which payment shall be made, and fix some limitation upon the amount which may be so expended. The prohibition against drawing money from the state's treasury except by an appropriation made by law cannot be ignored or evaded. Within the meaning of the Constitution, money is in the treasury when it has been collected from the taxpayers and is in the hands of any custodian authorized by law to hold it for the state. The Legislature can take no more liberty with money in the hands of the tax collector than it can with money in the actual custody of the state treasurer. Nor is the constitutional restriction less binding upon the Legislature when dealing with the state's revenue before its collection.

[4] The duty to make an appropriation by law does not necessarily mean the adoption of the formal method common in what are called "appropriation bills." It is sufficient if the Legislature authorizes by an appropriate law the expenditure, and fixes some limitation upon the amount.

[5] It is a matter of which the courts may take cognizance that many millions of dollars are now due the state in the form of delinquent taxes. To allow commissioners' courts or any administrative department unlimited power to apply whatever portion of those taxes they may think proper to payment for making abstracts, to aid in the collection, would, we think, be a violation of the spirit, if not of the letter, of the Constitution. While in this instance the contract does fix a limit upon compensation which may not be unreasonable, the legal authority under which the contract was made is without a limit, except the amount of the taxes that may be delinquent and collected.

For the reasons stated, we think the contract upon which this application is founded is invalid, in so far as it affects state funds, and the judgment of the trial court will be affirmed.