## BISHOP et al. v. SANFORD.
## No. 3541.

Court of Civil Appeals of Texas. Amarillo.
Feb. 4, 1931.

Rehearing Denied March 4, 1931.

Cooper & Lumpkin and Morgan, Culton, Morgan & Britain, all of Amarillo, for appellants.

Underwood, Johnson, Dooley & Simpson, of Amarillo, for appellee.

HALL, C. J.

On September 13, 1918, the appellee, Sanford, executed to appellant Grover C. Bishop an oil and gas lease upon 8,640 acres of land in Carson county. The lease provides for the payment of 30 cents per acre annual rental and permits the postponement of drilling operations by the annual payment of said rental for a period of five years. The lease recites that it is executed "for the sole and only purpose of mining and operating for oil and gas, the laying of pipe lines and the building of tanks and power stations and structures thereon to produce, save and take care of said products." It further contains the usual stipulation that the lease shall remain in force for a term of five years from its date "and as long thereafter as oil or gas or either of them is produced from said lease by the lessee." It is further stipulated that, if the first well drilled proves to be a dry hole and a second well is not commenced within twelve months, the lease should terminate as to both parties unless payment of rentals be resumed. It is declared that the estate of either party may be assignable in whole or in part, that the lessee is to deliver to lessor in tanks or pipe lines one-eighth of the gas from each well where gas only is found while the same is used off of the premises. It is specially provided that the lessor may have gas free for all stoves, inside lights for his dwelling, and the lessee shall pay $50 per year for gas produced from any oil well. The last paragraph of the lease is: "This lease shall terminate as to both parties hereto on Sept. 16, 1923, unless oil or gas is being produced in paying quantities."

The lessee, Bishop, sublet and assigned to numerous parties and corporations smaller tracts of the lands covered by his lease; 1,800 acres included in his lease reverted to the lessor, Sanford, by reason of the failure of certain assignees and sublessees to pay the annual rentals. None of this 1,800 acres is involved in this suit.

In 1922 the Humphreys Oil Company acquired from Bishop and other lease holders one-half of the acreage held by them, amounting to approximately 3,000 acres; the consid-

eration for said transfers being the agreement by the Humphreys Oil Company to drill a well. It was stipulated that this lease was in force on August 14, 1923. In July or August of 1923 the Humphreys Oil Company drilled a well on the N. E. ¼ of Sec. 11, block 3, which was included in its lease, and found gas in enormous quantities, estimated at about 140,000,000 cubic feet per day. The lessor, Sanford, being desirous of having the well deepened in an effort to secure oil, agreed with the Humphreys Oil Company that the latter should undertake to drill deeper, and, in order to secure a deeper test, Sanford stipulated that he would not assert any forfeiture of the lease on the forfeiture day if the well was ruined in an effort to secure oil. Acting under this contract, the Humphreys Oil Company endeavored to drill deeper, but, after having its drilling tools blown out of the hole on several occasions, it gave up the effort, capped the well, and a few weeks after the expiration of the primary term removed its derrick, bunkhouses, and all drilling equipment from the leased premises. The well was capped and abandoned in the latter part of 1923 or early in 1924, and was in that condition at the time of the trial about 2½ years thereafter.

About the 1st of March, 1924, the portion of the premises leased to the Humphreys Oil Company, including the capped gas well, was conveyed to the Pure Oil Company, and this latter company, in February, 1926, pursuant to notice from plaintiff, Sanford, entered into a written agreement with Sanford relinquishing its interest in the premises, and at the same time Sanford executed and delivered to the said company a new and separate lease covering the same property for a consideration of $15,200 in cash, certain reserved rights in the gas well, and $5 per acre contingent payment out of oil.

On the 20th day of July, 1926, Sanford filed this suit in the district court of Carson county. The first count is a formal action in trespass to try title. The second count is in three subdivisions wherein the plaintiff seeks to cancel the lease and have the leasehold interests terminated, because: First. There has been a cessation of user and of production after the expiration of the primary term. It is insisted in this part of the petition that there has been no production within the meaning or sense of the lease after the expiration of the primary term, and has therefore been a complete cessation of the uses and purposes of the lease. Second. That there has been an abandonment of the lease and of the leasehold estate by the defendants. In the third subdivision plaintiff seeks a forfeiture of the lease because of the alleged breach of implied covenants to market the gas, after the discovery well, and to further prospect and develop the lease for oil.

The original lease to Bishop covered all of surveys 12 and 14 in block 3, as well as the remaining sections going to make up the 8,640 acres of the original lease. On October 10, 1925, the plaintiff, Sanford, executed and delivered to Sue Stevens, Perry Stevens, Sam B. Vaughn, A. A. Lumpkin, and S. B. Tarkington, a royalty deed which recites a consideration of $100 cash and other valuable considerations, the granting clause of which is as follows: "Have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell, assign and deliver unto said grantees an undivided one-fourth interest in and to all of the oil, gas and other minerals, in, on and under and that may be produced from the following described land situated in Carson County, Texas, to-wit: First tract: The N. W. ¼ of Sec. No. 12, Block No. 3, original grantee Adams, Beaty & Moulton, and containing 160 acres of land; Second tract: The N. E. ¼ of Sec. No. 14 in Block No. 3, original grantee Adams, Beaty & Moulton, and containing 160 acres of land; together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said lands for oil, gas and other minerals and removing same therefrom."

The deed contains this further recitation: "The above mentioned and described lands are now under an oil, gas and mineral lease executed by the grantor herein and it is understood and agreed that this sale is made subject to the terms of said lease or leases, but covers and includes one-fourth of all the oil royalty and gas rental or royalty due and to be paid under the terms of said lease or leases. It is understood and agreed that one-fourth of the money rentals which may be paid to extend the term or terms within which a well may be begun under the term of said lease or leases is to be paid to the grantees herein and in the event the above described lease or leases for any reason become cancelled or forfeited, then and in that event an undivided one-fourth of the lease interests and all future rentals on said land for oil, gas and other minerals in, on and under the above described lands, together with an undivided one-fourth interest in all future funds." This recitation is followed by the usual habendum et tenendum and warranty clauses. The instrument was filed for record and duly recorded in the clerk's office of Carson county on the 13th day of October, 1925.

This instrument was introduced in evidence upon the trial, and the appellants insist that it shows that the grantees, Stevens et al., are necessary and indispensable parties to this suit. The issue was not raised in the trial court, but is urged here as fundamental error. The appellees insist that the contention is without merit under the general rules governing the making of parties defendant and

for the further reason that the parties had entered into a written stipulation on the 16th day of April, 1930, which was introduced during the trial, the material portions of which are as follows:

"1st. That on or about September 16, 1918, the plaintiff J. M. Sanford as lessor executed and delivered to the defendant Grover C. Bishop as lessee, that certain oil and gas lease set out in plaintiff's petition herein, which is recorded in the deed records of Carson County, Texas, in Vol. 20, at page 183, et seq., and at the time plaintiff executed and delivered said lease he was the fee simple owner of all the lands and premises described in said lease, including all of the lands now involved in this suit.

"2nd. That plaintiff has remained and is still the fee simple owner of said land involved in this suit, subject to said lease, if the same is now subsisting and in force, and if said lease has terminated upon said land, then the plaintiff owns the reversion thereof and all of said former leasehold estate therein has become reinvested in the plaintiff.

"3rd. That if said lease is still subsisting and in force upon the lands in controversy, but legal ground and cause exists to cancel same, then the plaintiff is entitled to claim and enforce such cancellation."

"11th. That any party hereto many introduce this stipulation in evidence upon the trial of this cause to establish the facts herein stated and no further proof shall be required upon any fact herein stipulated. However, at the option of any party additional proof upon any subject herein may be offered consistent herewith."

In its final analysis, this is a case in which the plaintiff, Sanford, seeks to enforce equitable rights through the equitable remedies of cancellation and rescission. The rules of equity with reference to parties control in such cases, and, when measured by these rules, we think Sue Stevens, Perry Stevens, Sam B. Vaughn, A. A. Lumpkin, and S. B. Tarkington are necessary and indispensable parties.

21 C. J. 258, § 253, states the rule as follows:

"It is a general rule of equity pleading that all persons who are materially interested in the event of the suit or in the subject-matter, however numerous, should be made parties either as plaintiffs or as defendants. This Rule is everywhere recognized, and it is stated in more or less similar terms in almost every case wherein the subject of parties in equity has been under discussion. In code practice the rule remains the same.

"The reason for the rule is found in the principle of public policy enforced in courts of equity, that a decree should finally and completely determine the rights which all persons have in the subject-matter decided, so that the parties may safely obey and act upon the decree, and a multiplicity of suits or a circuity of proceedings may be avoided. To this end it is necessary to bring all the parties before the court, as otherwise their interests will not be concluded, for, as a general rule, no binding decree can be rendered against a person who is not a party to the suit."

On page 273, § 276, Id., a further statement of the rule is made as follows:

"Necessary or indispensable parties are those without whom the court will not proceed to any decree, even as to the parties before it.

"This class includes all persons who have an interest in the controversy of such a nature that a final decree cannot be made without either affecting their interests or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience. Accordingly, persons whose interests will necessarily be affected by any decree that can be rendered are necessary and indispensable parties, and the court will not proceed to a decree without them, while parties whose interests will not be affected by the decree sought, although they may have an interest in the subject-matter, are not ordinarily necessary parties, although they may sometimes be proper parties under the general rule, in order to avoid a multiplicity of suits. Therefore the object rather than the subject of the suit must be looked to, and only those are necessary parties whose rights are involved in the purpose of the bill. Therefore, also, the prayer for relief is important in determining the requisite parties, as one need not be made a party against whom no relief is demanded, provided his rights will not necessarily be affected.

"But all those against whom relief is prayed are necessary parties, and persons whose rights will be affected by the decree are necessary parties, although no relief is prayed against them. The term 'necessary parties' also includes persons who, while not necessary or indispensable on account of their own interest, yet are so connected with the subject-matter of the controversy that it is necessary to have them before the court for the proper protection of those whom the decree will necessarily and directly affect."

And, further, on page 280, Id., it is said: "It is, of course, impossible to divest or destroy a title by suit in which the holder of the title attacked is not a party and therefore, where the decree is to affect a title, all holding or claiming such title must be brought in. * * * Where the execution of the decree would throw a cloud upon a person's title, such person is an indispensable party in an action to quiet title or to remove cloud."

In 9 C. J. 1225, § 126, it is said: "It is the general rule in suits for rescission or cancellation that all persons whose rights, interests or relations with or through the subject-matter of the suit would be affected by the cancellation or rescission, should be brought before the court so that they can be heard in their own behalf. This is in accordance with the well settled rule that in suits in equity, every person having or claiming equitable or legal rights in the subject-matter must be made a party. The Court can not undertake to cancel a written instrument without having before it all the parties to be affected by the proposed cancellation and where a final decree in a suit to cancel deeds cannot be made without materially affecting the interests of persons not made parties, neither the court of original jurisdiction nor review should proceed further until the omission is corrected, although no objection is made by any party litigant." Citing Hurst v. Knight (Tex. Civ. App.) 164 S. W. 1072, with cases from other jurisdictions supporting the general rule.

In 47 C. J. 91, § 182, the rule in Texas with reference to necessary parties is stated thus: "In accordance with the policy of the law in this state to determine all issues in one proceeding so far as practicable all parties necessary for that purpose should be joined and it is well settled that all persons materially interested in the subject-matter and object of the suit should be made parties, either as plaintiffs or defendants, and every person who will be directly affected by the judgment in the case is not only a proper party but is, in fact, a necessary party, either as plaintiff or defendant"—citing Southern Surety Co. v. Solomon (Tex. Civ. App.) 4 S.W.(2d) 599; Collin County School Trustees v. Stiff (Tex. Civ. App.) 190 S. W. 216; Hume v. Perry (Tex. Civ. App.) 136 S. W. 594; Sanger v. Corsicana National Bank (Tex. Civ. App.) 87 S. W. 737; Id., 99 Tex. 565, 91 S. W. 1083; Denison v. League, 16 Tex. 399; Hardin v. Hardin (Tex. Civ. App.) 1 S.W.(2d) 708; Logan v. Ludwick (Tex. Civ. App.) 283 S. W. 548; Georgia Casualty Co. v. Campbell (Tex. Civ. App.) 266 S. W. 854; Stokes v. Paschall (Tex. Civ. App.) 243 S. W. 611; Waldrep v. Roquemore, 60 Tex. Civ. App. 138, 127 S. W. 248; Matagorda Canal Co. v. Markham Irr. Co. (Tex. Civ. App.) 154 S. W. 1176; McDonald v. Simons (Tex. Com. App.) 280 S. W. 571; Wilson v. Reeves County Water Improvement District (Tex. Civ. App.) 256 S. W. 346; Nail v. Taylor (Tex. Civ. App.) 223 S. W. 719; Parrish v. Williams (Tex. Civ. App.) 53 S. W. 79.

In 7 Tex. Jur. 972, § 54, it is said: "In accordance with the general rules as to parties, all persons in whose favor or against whom there may be a recovery, however insignificant, and all persons who are interested, although indirectly, in the subject-matter of the suit, or in the relief granted, and whose rights may be affected by the decree, must be made parties. The rule is settled in Texas that all parties to a deed, contract, or other writing or interested in the contract, must be made either party plaintiff or defendant in an action for cancellation and rescission of such an instrument. The reasons for the rule are that the decree operates in personam rather than in rem and that the rights and interests of all persons growing out of or connected with the subject-matter of the dispute, must be adjudicated in one suit"—citing many cases, amongst them being Runck v. Gates (Tex. Civ. App.) 14 S.W.(2d) 885; Business Men's Oil Co. v. Priddy (Tex. Com. App.) 250 S. W. 156 (affirming [Tex. Civ. App.] 241 S. W. 770); Christian v. Hood (Tex. Civ. App.) 19 S.W.(2d) 621; Dial v. Martin (Tex. Civ. App.) 8 S.W.(2d) 241; Cleveland v. Ward, 116 Tex. 1, 285 S. W. 1063; Gulf Production Co. v. Colquitt (Tex. Civ. App.) 25 S.W.(2d) 989; McKay v. Phillips (Tex. Civ. App.) 220 S. W. 176; Perkins v. Terrell (Tex. Civ. App.) 214 S. W. 551; McNeill v. Cage, 38 Tex. Civ. App. 45, 85 S. W. 57; Cabaness v. Holland, 19 Tex. Civ. App. 383, 47 S. W. 379.

On page 974, § 55, Id., it is said: "In a suit to cancel a conveyance, it is necessary to join the grantor and the grantee. Necessary or indispensable parties include persons owning a part interest in the land."

See, also, 4 R. C. L. 517; Black on Rescission & Cancellation, §§ 552, 639, 657.

1 Pomeroy's Eq. Jur. (4th Ed.) § 114, says:

"The equitable doctrines with respect to parties and judgments are wholly unlike those which prevail at the common law, different in their fundamental conceptions, in their practical operation, in their adaptability to circumstances, and in their results upon the rights and duties of litigants. The governing motive of equity in the administration of its remedial system is to grant full relief and to adjust in the one suit the rights and duties of all the parties which really grow out of or are connected with the subject-matter of that suit. Its fundamental principle concerning parties is that all persons in whose favor or against whom there may be a recovery, however partial, and also all persons who are so interested, although indirectly in the subject-matter and the relief granted that their rights or duties might be affected by the decree, although no substantial recovery can be obtained either for or against them, shall be made parties to the suit; and it is not ordinarily a matter of substantial importance whether they are joined as plaintiffs or as defendants, although this question of procedure is regulated to a certain extent by rules based upon considerations of convenience rather than upon any essential requirements of the theory. The

804

primary object is that all persons sufficiently interested may be before the court so that the relief may be properly adjusted among those entitled, the liabilities properly apportioned, and the incidental or consequential claims or interest of all may be fixed and all may be bound in respect thereto by the single decree."

The royalty deed in this case is in all essential matters the same as that construed in the case of Hoffman et al. v. Magnolia Petroleum Co., 273 S. W. 828, in which the Commission of Appeals, speaking through Stayton, Justice, held that the instrument in question conveyed an interest in the mineral rights of all of the land described in the original lease. This being true, the appellee's offer to disclaim as to certain portions of the original leased premises held by one of the lessees under Bishop and described in the royalty deed does not relieve the situation. If the Hoffman Case fixes the rights of Stevens et al., then they are interested in the royalties to be obtained from all of the land described in the original lease. Nor does the stipulation quoted above have any effect upon the issue of necessary parties. Written stipulations, when properly executed and filed under the rules, are ordinarily binding upon the trial court, in so far as they establish the existence of certain facts mentioned therein, and to that extent they relieve the parties to the agreement of the necessity and burden of proving the facts therein recited, but the parties cannot in this case bind either the trial court or this court as to the matter of necessary and indispensable parties. It appears from the pleadings and the facts that the grantees in the royalty deed, being necessary and indispensable parties and not having been properly brought into the case, their rights can in no degree be affected by a stipulation made between other necessary parties to the suit, even though the stipulation is approved by the trial court. Stringer v. Franklin County, 58 Tex. Civ. App. 343, 123 S. W. 1168. According to the royalty deed, Stevens et al. acquired an undivided interest in the oil and gas royalties provided in the leases, and to that extent they are certainly interested in both the subject-matter of this suit and in the object sought to be attained. Royalties, like rents, are classed as incorporeal hereditaments, and their rights are inseparably and indivisibly connected with the rights of all the parties to this suit. If Sanford succeeds in canceling the lease and recovering the mineral rights, it will certainly adversely affect the rights of Stevens et al. under their deed. They have bought the interest in good faith, and, so far as this record shows, are entitled to the per cent. of the royalties stated in their deed, and it is inequitable to permit Sanford to cancel his lease, upon which their right to royalties depends, without giving them an opportunity to be heard. The duty devolved primarily upon him to make them parties.

We think the following cases decide the specific question in favor of appellants' contention: Gulf Production Co. v. Colquitt (Tex. Civ. App.) 25 S.W.(2d) 989; Cox v. Sinclair Gulf Oil Co. (Tex. Civ. App.) 265 S. W. 196: Vaughan v. Littlefield (Tex. Civ. App.) 4 S. W.(2d) 153; Hitson v. Gilman (Tex. Civ. App.) 220 S. W. 140; Edinburg Irr. Co. v. Ledbetter (Tex. Civ. App.) 247 S. W. 335; Id. (Tex. Com. App.) 286 S. W. 185; Cleveland v. Ward, 116 Tex. 1, 285 S. W. 1063, 1069.

For the reasons stated, the judgment is reversed, and the cause remanded.

JACKSON, J., not sitting.