ROGER L. TENNANT, RECEIVER, V. MRS. EMMA LOUISA DUNN ET AL.

No. 6961. Decided November 24, 1937.
(110 S. W., 2d Series, 53.)

*J. C. Muse, Jr.,* of Dallas, for plaintiff in error.

It was error for the Court of Civil Appeals to direct the receiver to pay to Mrs. Dunn $3,240.35, being the sum received from 5/48 of 7/8 of the oil sold from well No. 1, and in further directing him to pay to her "whatever sum represents 5/48 of 7/8 of the oil produced from well No. 1 from September 30, 1934, until the receivership ends or Mrs. Dunn has received her interest of $25,000.00," when the instrument itself provides that the amount to be paid to Mrs. Dunn is to be measured by "the market price thereof at Joinerville, Texas," and not at a price prevailing elsewhere. Taylor Oil & Gas Co. v. Pierce-Fordyce Oil Co., 226 S. W. 467; American Refining Co. v. Staley, 274 S. W. 272; 55 C. J. 226; 31 Tex. Jur. 979.

*Fred J. Dudley,* of Dallas, for defendant in error.

Because plaintiff shows no injury of substantive law nor conflict as affecting the receiver the case should be dismissed. Kelley Island Lime & Transport Co. v. Masterson, 100 Texas 38,

93 S. W. 427; Campsey v. Brumley, 55 S. W. (2d) 810; Dreeben v. Whitehurst, 68 S. W. (2d) 1025.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

Plaintiff in error Roger L. Tennant was appointed by a district court of Dallas County and qualified as receiver of the property of Indian State Oil Company, a joint stock association. The property consisted in the main of oil and gas leases or interests in oil and gas leases, one of such interests being an undivided one-half in the oil and gas leasehold estate in a 5½-acre tract of land out of the Juan Ximines Survey in Rusk County. The association prior to the receivership proceedings had sold and assigned many undivided interests or units in its properties, the assignments providing that the association should complete the drilling of wells without expense to the assignees and should have charge of the development and operation, and that in the event of production of oil or gas in paying quantities the proceeds from the sale of oil or gas produced, after the payment of expenses of operation, should be disbursed monthly to the assignees in accordance with their interests.

Plaintiff in error Mrs. Dunn acquired several of such units. She became by two assignments, one made June 18, 1931, and the other August 18, 1931, the owner of a 14/2000 interest or unit in the 5½-acre leasehold estate above described. On June 18, 1931, the association for a consideration of $5,000.00 paid, and which was used in the development of its property, executed and delivered to Mrs. Dunn another instrument in the form of an assignment which is the subject of the controversy herein and is as follows:

"WHEREAS, on the 12th day of September A. D. 1930, a certain oil and gas lease was made and entered into by and between Columbus Redwine and wife, Minnie Redwine and H. L. Williford, covering the following described land in the County of Rusk, Texas, to-wit:

"Five and one-half (5½) acres of an eight and two-thirds (8 2/3) acre tract, same being a part of the east one-third (1/3) of the North one-half (1/2) of the Lum-Taliaferro 52.6 acre tract of the Juan Ximines Survey in Rusk County, Texas, said lease being recorded in the office of the County Clerk of said County in Book Number 152, Page 11 of the Deed Records of said County;

"AND, WHEREAS, seven sixteenths (7/16) of said lease and all rights thereunder or incident thereto, are now owned and

held by the Indian State Oil Company of Texas.

"NOW, THEREFORE, for and in consideration of the sum of Five Thousand Dollars ($5,000) in cash paid by Mrs. Emma Louise Dunn out of her own separate funds, the receipt of which is hereby acknowledged, the Indian State Oil Company of Texas, a joint stock company, the present owner of seven sixteenths of said lease and all rights thereunder or incident thereto, does hereby bargain, sell, transfer, assign and convey all the right, title and interest of the original lessee and present owner in and to said lease and all rights thereunder insofar as it covers and only covers Twenty Five thousand dollars ($25,000) worth of oil at the market price thereof at Joinerville, Texas, out of and from five forty-eighths (5/48) of Seven Eighths (7/8) of the oil produced from said well shall be delivered at such market price, free of any charges and/or expenses of production or operations of said property to Mrs. Emma Louise Dunn of Ennis, Texas, her heirs, successors and assigns, as her own separate property for her separate use and benefit.

"AND, for the same consideration, the undersigned, for itself, its successors and assigns does covenant with said assignee, her heirs, successors and assigns that it, the said Indian State Oil Company of Texas, is the lawful owner of seven sixteenths (7/16) of said lease and the rights and interests thereunder; that the undersigned has good right and authority to sell and convey the same and the said rights and interests are free and clear from all liens and encumbrances and that all rentals and royalties thereunder have been duly paid.

"IN WITNESS WHEREOF, said Indian State Oil Company of Texas has caused this instrument to be signed by its duly authorized President to execute same, this the 18th day of June A. D. 1931.

INDIAN STATE OIL COMPANY OF TEXAS

(SEAL)        By:-

(Signed)  J. W. Sappington

ATTEST: R. G. Pender                    President."

Secretary.

This instrument, duly acknowledged, was filed for record on June 25, 1931, and recorded in the deed records of Rusk County. At that time one well was in process of drilling or completion on the 5½-acre tract. Before the receiver took charge of the property on December 2, 1931, this well had been completed to the extent that it produced a small quantity of oil. The receiver fully completed the well (known thereafter as Tennant well No. 1) by tubing and otherwise equipping it for operation and has received as proceeds of oil produced and sold therefrom to

October 1, 1934, the total sum of $35,552.24. Under order of the district court the receiver drilled a second well on the 5½-acre tract and has received as proceeds of the oil produced from it the total sum of $14,889.02. The Court of Civil Appeals found that $3,240.35 represents 5/48 of 7/8 of the proceeds received by the receiver from the oil produced and sold from well No. 1, and that he had on hand when the case was tried in district court more than sufficient money to make payment of such sum to Mrs. Dunn. This finding is not questioned by plaintiff in error either in the motion for rehearing filed in the Court of Civil Appeals or in the application for writ of error.

Mrs. Dunn, after being cited in the receivership proceeding, filed a petition in intervention (in which her attorney, to whom she had assigned an interest, joined), asserting her ownership under the instrument above set out of 5/48 of 7/8 of the oil produced and to be produced from well No. 1, and prayed that her ownership of such interest be determined and that the receiver be directed to pay her 5/48 of 7/8 of the proceeds already received and thereafter received by him from oil produced and sold from the well. After report of a master in chancery, to whom the intervention was referred, the district court found that the instrument by which the 5/48 of 7/8 interest was assigned to Mrs. Dunn conveyed no interest in the oil in place or in the oil produced but evidenced merely an obligation to pay the sum of $25,000.00 out of the proceeds of the sale of oil, that the recording of such instrument in the deed records was not constructive notice, and that Mrs. Dunn's claim was an unsecured claim inferior to costs accruing in the administration and operation of the receivership, inferior to all lien and secured claims and also inferior to the rights of unsecured creditors who sold material, performed labor or rendered service to the association. Judgment was rendered that the receiver pay to Mrs. Dunn and her attorney the sum of $25,000 out of 5/48 of 7/8 of the proceeds of the sale of all oil produced from well No. 1 after all costs of administration and operation of the receivership had been paid and after all secured and lien claims and all claims of unsecured creditors had been paid in full.

The Court of Civil Appeals concluded that the instrument conveyed to Mrs. Dunn 5/48 of 7/8 of the oil and gas in place, reversed the judgment of the trial court and rendered judgment directing the receiver to pay to Mrs. Dunn and her attorney $3,240.35, representing the interest of Mrs. Dunn in the proceeds of the oil which had been sold from well No. 1 and also to pay 5/48 of 7/8 of the proceeds of all oil produced and sold

from well No. 1 until the receivership ends or until Mrs. Dunn has received her interest of $25,000.00. 82 S. W. (2d) 728.

■ We do not agree with the conclusion expressed by the Court of Civil Appeals that the instrument under construction is a conveyance of part of the oil in place. It does not purport to convey oil in place and it gives the assignee or the grantee no dominion over the oil before production and no right to enter upon the land to produce it. The ultimate right of Mrs. Dunn, the assignee or grantee, is the right to a certain quantity of the oil after it is produced from the well, the same to be delivered to her free of any charges for production or operation.

It does not follow, however, that the instrument does not create an interest in land or that it evidences merely a debt to be paid out of oil produced. The oil and gas lease operated to invest the lessee with a determinable fee in the oil and gas in place. Waggoner Estate v. Sigler Oil Co., 118 Texas 509, 517, 19 S. W. (2d) 27; Sheffield v. Hogg, 124 Texas 290, 297, 77 S. W. (2d) 1021, 80 S. W. (2d) 741. The instrument above set out under which Mrs. Dunn claims follows the form ordinarily used by a lessee in assigning or conveying an interest in the lease-hold estate. It is not a promise to pay money. It is not a contract for the sale and delivery of oil as personalty after production, but it undertakes to invest the assignee, and we think it does invest her, presently with a right or interest in what the assignor owned. By its terms it assigns and conveys "all the right, title and interest of the original lessee and present owner in and to the lease and all rights thereunder in so far as it covers and only covers Twenty Five thousand dollars ($25,000) worth of oil at the market price thereof in Joinerville, Texas, out of and from five forty-eighths (5/48) of Seven Eighths (7/8) of the oil produced from said well." A part of the lessee's right or interest is assigned, not a fractional interest in the entire lease-hold estate but the absolute right, without charges for production or operation, to a fractional part of the oil as and when it is produced from a well on the leased land until the assignee has received oil of the total value of $25,000. The total quantity of oil to be delivered to the assignee is not a fixed fraction of the entire production and is not a certain number of barrels, but it is measured by value according to a specified standard.

The interest assigned or conveyed by the instrument is in the nature of an overriding royalty. The assignment gives to Mrs. Dunn, as the reservation of an ordinary overriding royalty gives to or retains in the grantor or assignor, the right to a certain quantity of oil taken from the land, delivered as it

is produced, free of charges or expenses of production or operation.

■ While there was prior to the decision of Sheffield v. Hogg, 124 Texas 290, 77 S. W. (2d) 1021, 80 S. W. (2d) 741, confusion in the opinions of the courts of this State as to the nature of royalty interests, it is settled by that decision that royalties, whether payable in money or in kind, issuing out of the ordinary oil and gas leasehold estate, a determinable fee, "are interests in land; hence not subject to parol sale, but have the protection of the Statute of Frauds, the statutes regulating conveyances and mortgages of real estate, and the statutes requiring the recording of instruments affecting title to or liens on land." See also: Property Interests Created by Lease, by A. W. Walker, Jr., 7 Texas Law Review, pp. 1, 32-49; Comment on Sheffield v. Hogg, by A. E. Amerman, Jr., 13 Texas Law Review, pp. 501-511. Associate Justice GREENWOOD, in writing the opinion in Sheffield v. Hogg, quoted at length with approval from the opinion of Justice HUGHES in United States v. Noble, 237 U. S. 74, 59 L. Ed. 844, 846-849, 35 Sup. Ct. 532, wherein it was held that unaccrued royalties of 5% of the market value of all minerals mined or removed under an oil and gas lease executed by an Indian allottee were interests in land within the terms of a restriction against alienation of the land or any interest therein. The quotation made from Justice HUGHES' opinion contains in part the following: "The rents and royalties were profit issuing out of the land. When they accrued, they became personal property; but rents and royalties to accrue were a part of the estate remaining in the lessor. As such, they would pass to his heirs, and not to his personal representatives"; and further: "The fact that rent- is to be paid in money does not make it any less a profit issuing out of the land."

Part of the royalties involved in The Federal Royalty Co. v. State of Texas (which case for decision and opinion was consolidated with Sheffield v. Hogg) arose from the execution of oil and gas leases under the terms of the Relinquishment Act (Articles 5367-5382, R. S. 1925). The Federal Royalty Company had acquired by assignments or conveyances from land owners parts of such land owners' royalties arising from the execution of oil and gas leases by the land owners as agents of the State. These royalties were not created as is the ordinary royalty by reservation made by the owner of the land and the minerals, for the Relinquishment Act was construed in Greene v. Robison, 117 Texas 516, 8 S. W. (2d) 655, to mean that the land owner has no title to the oil and gas before the execution of a lease and acquires his royalty interest only upon the execu-

tion by him of an oil and gas lease as the State's agent, and that such royalty interest is his "compensation from the lessee out of the lessee's production." It is to be observed also that the land owner's royalty, as well as the State's royalty, under such leases is not payable in kind but by the terms of the Act is an amount representing a fraction of the value of the oil and gas (Article 5368, R. S. 1925). The Court in the opinion in Sheffield v. Hogg approved and followed Lemar v. Garner, 121 Texas 502, 50 S. W. (2d) 769, holding that such royalties belonging to the land owner after the execution of the lease are property rights assignable by the owner apart from conveyance of the surface, and held further, notwithstanding the differences above noted between such royalties and ordinary royalties, that they are interests in land.

The gist of the opinion in Sheffield v. Hogg is that oil and gas royalties, whether payable in kind or in money, and whether arising from the ordinary lease of land in which the lessor owns the minerals, or from a lease made under the Relinquishment Act, should be adjudged to be present interests in land rather than mere rights in personalty at some uncertain date, because they are profits arising out of land and further because such classification, which accords with the practice in the oil and gas industry, furnishes a stability highly important, if not essential, to the structure of that business. For the same reasons the right created by the assignment to Mrs. Dunn should be classified as an interest in land.

■ It is our opinion that the instrument under consideration conveys an interest in the land, that its filing and recording in the deed records gives constructive notice, and that the interest so created (giving the right to the quantity of oil specified as the same is produced from the well) is superior to interests thereafter assigned or conveyed and to liens subsequently attaching or fixed, and also superior to the claims of unsecured creditors and to expenses and costs of the receivership.

The conclusion stated is supported by other authorities. The instrument construed in Texas Company v. Continental Supply Company, (Com. App.) 18 S. W. (2d) 602, was an assignment by the Oxford Oil Company, the owner of an oil and gas lease, to the Continental Supply Company by which it conveyed to the Continental Supply Company "twenty-five per cent (25%) of the production of oil to be produced by said Oxford Oil Company under and by virtue of" the lease. The instrument was recorded in the deed records. Thereafter the Oxford Oil Company entered into an operating contract with Southern Exploration Company and for that company's agreement to develop the property con-

veyed to it an undivided one-half interest in the lease. The trial court found that the assignment to the Continental Supply Company was in effect a mortgage, the evidence showing that it was given for the purpose of securing a debt. Southern Exploration Company sought to charge the Continental Supply Company, or its interest, with a part of the expenses of developing the property and producing oil. The opinion of the Commission of Appeals expressly approved the decision of the Court of Civil Appeals that Southern Exploration Company acquired its interest in the lease with both actual and constructive notice of the right of the Continental Supply Company under the mortgage and that its claim for reimbursement for expenses incurred in developing the lease was inferior to such right of the Supply Company. Judge LEDDY expressed in the opinion the further conclusion that "Southern Exploration Company, having voluntarily entered into such relation, can occupy no better ground than that held by the Oxford Oil Company, whose right to the oil produced from the lease was unquestionably subordinate to the mortgage of the Continental Supply Company." So here, other persons or companies acquiring interests from or under the Indian State Oil Company, or furnishing labor or material for the development or operation of the leased land, after the execution of the instrument conveying the interest to Mrs. Dunn, have no better right to the oil produced from the well, or its proceeds, than the Indian State Oil Company had after its execution of that instrument.

In Evans v. Ropte, 128 Texas 75, 96 S. W. (2d) 973, the Court held that a contract by which a land owner granted to another the exclusive privilege, subject to a limited right reserved, to take and sell mineral water from the land for a period of fifty years created an interest in land. Similarly, in Frazier v. Hanlon Gasoline Co., 29 S. W. (2d) 461 (application for writ of error refused) it was held that a written contract, by which a land owner vested in the other parties to the contract a one-half interest in whatever revenue might be realized from the sale of water from a tank on the land, created a property right or interest that could not be disposed of by the will of the land owner and was not revoked or otherwise affected by his death. See also: Graham v. Omar Gasoline Co., 253 S. W. 896; American Refining Co. v. Tidal Western Oil Corp., 264 S. W. 335; Bishop v. Sanford, 35 S. W. (2d) 800; Robichaux v. Bordages, 48 S. W. (2d) 698 (application for writ of error refused); Southwest Pipe Line Co. v. Empire Natural Gas Co., (U. S. C. C. A.) 33 Fed. (2d) 248, 64 A. L. R. 1229; Western Oil & Refining Co. v. Venago Oil Corporation, 218 Calif. 733, 24 Pac.

(2d) 971, 88 A. L. R. 1271; Arrington v. United Royalty Co., 188 Ark. 270, 65 S. W. (2d) 36, 90 A. L. R. 765.

Plaintiff in error, for support of the trial court's judgment that Mrs. Dunn is merely a creditor of Indian State Oil Company to the amount of $25,000.00 payable out of the proceeds of sale of oil produced, relies in part upon the finding made by the master in chancery that Mrs. Dunn was not in the oil business and was neither prepared nor expected to receive petroleum oil, but expected to be paid in money. Such fact can not change the plain meaning of the instrument which gives to the assignee the right to a certain part of the oil as produced. This being true, there is not before us for decision, and we do not decide, the question whether Mrs. Dunn's interest would be an interest in land, had the assignment provided for payment to her out of the proceeds of the oil, or of a part of the value of the oil, rather than for delivery of oil. Sheffield v. Hogg, supra, holds that royalties payable in money as well as royalties payable in kind are interests in land, and we have directed attention to the fact that the interest assigned to Mrs. Dunn, if not in principle the same as a royalty, particularly an overriding royalty, is very like it. We believe we may take judicial knowledge of the common practice in the industry as to the method of paying royalties or other interests in oil. Many owners of royalties and like interests have no facilities for receiving oil, and the ordinary practice is that the owners of such interests, whether payable in oil or in money, obtain payment in money after executing division orders to pipe line companies or other purchasers of the oil.

■ The fact that Mrs. Dunn's purchase of the interest was highly speculative and that she might realize either nothing or very large profits does not affect the nature of the interest. Most investments in oil properties or production are speculative. Mrs. Dunn did not become by virtue of the assignment a mining partner or a joint adventurer, for it gave her, not merely a part of the profits of the enterprise, but an interest in land, free of charges for development or operation and without obligation to share in losses; and under the assignment she had no right to engage, and did not in fact engage, in the operation of the leased land or of the well. Munsey v. Mills & Garitty, 115 Texas 469, 483, 283 S. W. 754; Gardner v. Wesner, 55 S. W. (2d) 1104 (application for writ of error refused); Cox v. Bond, 91 S. W. (2d) 479, and authorities therein cited; Transcontinental Oil Co. v. Mid-Kansas Oil & Gas Co., (U. S. C. C. A.) 29 Fed. (2d) 323 (certiorari denied, 279 U. S. 853); Holcomb v. Lorino, 124

Texas 446, 455, 79 S. W. (2d) 307; Note 63 A. L. R., pp. 909 et seq.

Plaintiff in error also makes the contention that Mrs. Dunn as owner of a 14/2000 interest or unit in the 5½-acre leasehold estate is a mining partner in the enterprise and that because she is a partner the rights which she asserts to the oil and its proceeds are inferior to the rights of partnership creditors, citing Wagner Supply Co. v. Bateman, 118 Texas 498, 18 S. W. (2d) 1052. Bateman's suit was for debt owed him by a partnership of which he was a member, and the decision was that the debt to the partner could not be paid out of partnership assets until partnership creditors had been paid. Assuming, but not deciding, that the unit owners are partners, the rule announced in Bateman's case does not have application to Mrs. Dunn's right, for, as has been said, she is not a creditor of the Indian State Oil Company.

■ The general rule as to expenses and costs incident to receivership is that "a receivership is always subject to vested rights." An existing lien or other vested right or interest can not be displaced for indebtedness incurred through the operation of the business of a private corporation in receivership, except in extraordinary circumstances, or when the owner of the lien or other vested interest has procured the appointment of the receiver with power to operate the property. Craver v. Greer, 107 Texas 356, 364, 179 S. W. 862; Wagner Supply Co. v. Bateman, 118 Texas 498, 509, 18 S. W. (2d) 1052; Id., 260 S. W. 672, 675; 36 Tex. Jur., pp. 264-267, Sec. 135. As there are no facts that take this case out of the general rule, Mrs. Dunn's interest has priority over costs and expenses incurred in the administration and operation of the receivership.

The record contains no evidence of the existence of any right prior or superior to that of Mrs. Dunn in the 5/48 of 7/8 of the oil produced from Tennant well No. 1 and no evidence of the existence of any unpaid claims secured by liens that have been adjudged by final orders not appealed from to be superior to the rights of Mrs. Dunn. It is shown by the record that the receiver, without making any payment either in oil or in money to Mrs. Dunn, has used proceeds of the oil produced from Tennant well No. 1 for the development and operation of the property, for the expenses of the receivership and for the payment of claims in large amounts. In view of these facts and the conclusions which have been stated, it is our opinion that the judgment rendered by the Court of Civil Appeals in favor of defendants in error is correct and should be affirmed when reformed in one respect.

The assignment to Mrs. Dunn limits her interest to oil of the total value of $25,000 measured by the market price of the oil at Joinerville, Texas. The parties to a contract may agree upon a standard of value and they are bound by such agreement unless the standard fails. American Refining Co. v. Staley, 274 S. W. 272 (application for writ of error refused) ; Simms Oil Co. v. American Refining Co., (Com. App.) 288 S. W. 163; Taylor Oil & Gas Co. v. Pierce-Fordyce Oil Assn., 226 S. W. 467.

The judgment of the Court of Civil Appeals is reformed by adding thereto the provision that the total amount of payments made to defendants in error in oil or from proceeds of oil produced and sold from well No. 1 shall equal and not exceed $25,-000.00 worth of oil at the market price thereof at Joinerville, Texas, using, in determining the total amount to be paid, the market prices at Joinerville, Texas, as of the times when the payments should have been made and are hereafter made. As thus reformed, the judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court November 24, 1937.