## AMERICAN LIBERTY OIL CO. v. STATE.
### No. 14794.

Court of Civil Appeals of Texas.
Fort Worth.
Oct. 18, 1946.

Rehearing Denied Nov. 15, 1946.

Carl C. Mays and Ross B. Lea, both of Dallas, for appellant.

Woodward L. Bass, Henry J. Anderson, Jr., McDonald & Anderson, and Geo. W. Anderson, all of Wichita Falls, for appellee.

McDONALD, Chief Justice.

In June of 1941 the County Board of School Trustees of Wichita County entered orders changing the boundary lines of several school districts in the county so as to include in such school districts the portions of the Wichita River lying adjacent thereto. The parties have stipulated that the Wichita River is a navigable stream within our laws, and that no person lives in the river-bed. None of the river had lain within the boundaries of said school districts prior to the entry of the aforesaid orders. Said orders were entered after the execution of leases, and contracts for mineral development of the four tracts of land involved in this suit.

This suit is to collect taxes against interests in land alleged to be owned by appellant by virtue of certain leases and contracts made for the purpose of mineral development in the bed of the Wichita River.

The issues on appeal are narrowed so that two questions are presented for decision.

The first question is whether the attempted inclusion of the river within said school districts was void, as against the collateral attack made in this suit for taxes, on the ground that the inclusion of the river was arbitrary, unreasonable and unjust and was an abuse of discretion on the part of said Board of School Trustees. Appellant makes no complaint on appeal of failure to observe any required formality in the proceedings taken to change the boundaries of the school districts, but contends that the changes of boundaries were made in pursuance of a scheme and purpose on the part of the Trustees to add to the tax revenue of the districts. Appellant contends that no possible benefit could have come to appellant or anyone else by reason of the inclusion of the river within the school districts. It argues that the County Board was without legal power to include the river bed within the school districts, and that the attempted redefining of the boundaries constituted a patent, gross, abuse of discretion and an arbitrary design to deprive appellant of its property without due process of law. Appellant cites cases holding that under certain circumstances an attempt on the part of a municipality to extend its boundaries to include areas which are uninhabited or unsuited for town purposes is void. State v. City of Avon Park, 108 Fla. 641, 149 So. 409; 30 T.J., p. 64; Vestal v. Little Rock, 54 Ark. 321, 329, 15 S.W. 891, 16 S.W. 291, 11 L.R.A. 778; Heaton v. Jackson, 34 Ohio App. 424, 171 N.E. 364; and State v. City of Stuart, 97 Fla. 69, 120 So. 335, 64 A.L.R. 1307. Appellant especially relies on the decision in Paducah-Illinois R. Co. v. Graham, D.C., 46 F.2d 806, where a school district attempted to extend its boundaries so as to include a railroad bridge which spanned the Ohio River. The court held that the extension of boundaries was obviously for the sole purpose of bringing the bridge into the district for taxation purposes.

■ Under familiar rules, the extensions of boundaries here involved cannot be collaterally attacked in this tax suit unless they were void. We do not have in this case an extension of boundaries to include only an isolated piece of property, like that involving the railroad bridge in the Paducah-Illinois Railroad case. It appears that the entire bed of the Wichita River throughout Wichita County was taken into the several school districts bordering on the river by a series of orders entered at the same time. We cannot say that the evidence shows as a matter of law that such action was taken solely for the purpose of subjecting property or property interests lying within the river to taxation, and that no benefit could have resulted to owners of such property or interests by reason of the inclusion of the river within the several school districts. To us it seems that it was proper for the school authorities to take into the school districts this considerable amount of land which had not theretofore been included in the school districts. Such action is not shown to have been arbitrary or unreasonable merely by proving that at the time of this suit no one resided in the river bed who might have had children attending school, or by contending that the nature of the business being carried on in the bed of the river is such that it derives no benefit from the schools.

■ The other question raised is whether the interests vested in appellant by reason of a certain drilling contract between the Board of Mineral Development and the G. W. Drilling Company, dated July 26, 1938, and later assigned to appellant, constitute taxable interests in real estate. We hold that they do.

By the terms of a contract executed on July 26, 1938, G. W. Drilling Company, to whose rights appellant has succeeded, agreed to drill certain oil wells for the State of Texas in the bed of the Wichita River, and the State agreed that certain specified sums per well should be paid for the drilling, equipping and operation of the wells. Such sums were to be paid only out of 75 per cent of all the oil and gas produced, saved and marketed from the wells so drilled.

■ An oil payment, as commonly called, created either by grant or by reservation of title to a fractional interest in the minerals until a certain amount of money has been paid to the owner of the oil payment, is an interest in land, and subject to taxation as such. Tennant v. Dunn, 130 Tex. 285, 110 S.W.2d 53; State v. Quintana Petroleum Co., 134 Tex. 179, 133 S.W.2d 112, 128

A.L.R. 843, on rehearing, 134 Tex. 179, 134 S.W.2d 1016.

Appellant argues that the oil payment here involved does not amount to an interest in land, but is no more than a contract providing for the payment of money under certain circumstances. The Supreme Court in Tennant v. Dunn, supra, expressly refused to decide whether the oil payment would have constituted an interest in land if the contract there involved had provided for payment of the specified sum out of the proceeds of oil, rather than for the delivery of a fraction of the oil.

Two of our Courts of Civil Appeals appear to have considered the underlying question now being discussed. The contract in Danciger Oil & Refining Co. of Texas v. Christian, Tex.Civ.App., 109 S.W.2d 980, writ dismissed, provided that the driller should be paid certain specified sums out of ¼ of ⅞ of the first oil or gas produced, saved and sold from the lease. The court declared that the interest thus created was an interest in land. In Sheppard v. Stanolind Oil & Gas · Co., Tex.Civ.App., 125 S.W.2d 643, 647, leases executed on behalf of the State of Texas provided for payment to the State of stipulated sums of money out of ⅛ of ⅝ of the first oil and gas, if, as, and when produced from the leased area. The question directly to be decided was whether the oil payments thus reserved to the State were such interests in the minerals as that the State was required to bear the gross production tax on the proportion of the oil which was applicable to the oil payments owned by the State. Referring to the money due to be paid on the oil payments, the court said:

"Inherently, therefore, these sums possess every characteristic of the royalty payments, save only that the former are limited to the quantity of oil actually produced up to the amount equal in value to the stated sums. Both are conditional absolutely upon the fact of production, and both are limited to the amount of production; the former continuing so long as there is production, the latter ceasing when the production reaches the stated amount. For all practical purposes, and viewed in the light of every practical consideration, the interest of the State in the production of ⅛ of ⅝ of the oil, up to the full amount of the stated sums, is essentially and actually in no wise different from its interest under its retained royalty."

The opinion in Veal v. Thomason, 138 Tex. 341, 159 S.W.2d 472, supports in principle the holding in Sheppard v. Stanolind Oil & Gas Company, just cited and adopts, by quotation, a portion of the opinion written by Chief Justice McClendon.

In Tennant v. Dunn, supra, the Supreme Court, referring to the decision in Sheffield v. Hogg, 124 Tex. 290, 77 S.W.2d 1021, on rehearing, 124 Tex. 290, 80 S.W.2d 741, said [130 Tex. 285, 110 S.W.2d 58], "Sheffield v. Hogg, supra, holds that royalties payable in money as well as royalties payable in kind are interests in land." So it seems to us, as it did to the court in Sheppard v. Stanolind Oil & Gas Co., supra, that there is no practical difference between a contract granting or reserving a fractional interest in the minerals until a certain sum of money has been paid therefrom, and a contract providing that a certain sum of money shall be paid from a specified fraction of the minerals, if, as and when the minerals are produced. In either case, the beneficial interest held by the owner of the so-called oil payment amounts practically to the same thing, he receives the proceeds of sales of the fractional interest in the minerals until he collects the amount of his payment, if the production is sufficient to bring about that result.

We have not written at greater length, because the discussions in the cited opinions are full and clear, and we simply refer to them. Attention is invited to an interesting discussion of the question here presented in an article in Texas Law Review, Vol. XX, page 259, written by Mr. A. W. Walker, Jr., and also to a case note in Texas Law Review, Vol. XVI, page 595.

The judgment of the trial court is affirmed.