

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

JOHN BEN SHEPPERD
ATTORNEY GENERAL

March 6, 1954

Hon. Ernest O. Thompson, Chairman
Railroad Commission of Texas
Tribune Building
Austin, Texas

Opinion No. S-123

Re: Authority of the Railroad Commission to require that a certain portion of the natural gas production of the Texas Hugoton Field be dedicated to the surface use of fuel for irrigation pumps, and related questions.

Dear General Thompson:

You have requested the opinion of this office as follows:

"The Commission has been petitioned to issue certain orders relating to the usage of natural gas for a localized area and purpose, namely, for irrigation pump fuel in the Texas Hugoton Field. The Commission's authority to issue the type orders requested is not specifically set out in the statutes; so a request is hereby made for an opinion concerning the Commission's authority in such matters.

"1.) Can the Commission issue an order requiring that a certain portion of the production from a field, or from a certain well, be dedicated to a local use, (i.e. fuel for irrigation pumps) and further, that such production not be charged against the allowable?

"2.) Can the Commission issue an order providing that a royalty owner, within the confines of a field, has the right to use whatever portion of his one-eighth of the gas produced for a local use?

"3.) Can the Commission issue an order which provides that the act of delivering natural gas from a gas well for use as pump fuel for irrigation pumps on the same land does not make the deliverer a gas utility company?

"4.) Can the Commission issue an order which provides
that the act of delivery of gas from a pipeline
for such use does not make the deliverer a gas
utility?"

In the interest of clarity, we set out our replies to the enum-
erated questions in their listed order.

(1) The recent case of Railroad Commission v. Rowan Oil Co.,
___Tex. ___, 259 S.W.2d 173 (1953), (the Spraberry Case), reiterated
the familiar principle that:

"An order of the Railroad Commission must be bottomed
upon a specific grant of power either contained in the Con-
stitution or delegated by the Legislature."

The constitutional power of the Railroad Commission to issue or-
ders for the prevention of waste of natural gas as a part of the natural
resources of this State is found in Section 59a of Article XVI of the Con-
stitution of Texas, and the statutory power of the Commission to regulate
the production of natural gas is found in Title 102, V.C.S. Articles 6014,
6015, 6049c, 6049d, V.C.S., authorize wells to be shut down completely in
order to prevent waste (Railroad Commission v. Rowan Oil Co., supra), and
Art. 6008 authorizes the Commission to prorate production from gas wells to
prevent waste or to protect correlative rights. Corzelius v. Harrell, 143
Tex. 509, 186 S.W.2d 961 (1945). It is therefore apparent that for an or-
der to be valid requiring a part of the production of gas from certain wells
to be utilized for certain surface uses, such order must be reasonably re-
lated to the prevention of waste or the adjustment of correlative rights.
See Railroad Commission v. Rowan Oil Co., supra.

As you know, waste in connection with the production of natural
gas from gas wells has been defined by law. Art. 6008. The Commission also
has authority to define factually what constitutes waste in a particular
field, so long as the definition is reasonable, non-discriminatory and
non-confiscatory. Railroad Commission v. Rowan Oil Co., supra.

With these fundamentals in mind, we have concluded that an order
of the Commission requiring that a certain portion of the production from
a field or from a certain well shall be dedicated to a surface use for fuel
for irrigation pumps is not as a matter of law reasonably related to the
prevention of waste or to the adjustment of correlative rights within the
conservation statutes. Arts. 6008, 6014, 6015, 6049c, 6049d, V.C.S. Cor-
zelius v. Harrell, supra; Railroad Commission v. Rowan Oil Co., supra.
That being true, the Commission does not have authority to promulgate such
an order.

We similarly conclude that all such production should be charged against the allowable and recorded, under Art. 6008. Although the Commission is vested with a broad discretion in gas proration matters (Art. 6008; 31-A Tex.Jur. 659, Sec. 389), we think that allowing such a credit on the allowables for such irrigation pump fuel purposes would be discriminatory between operators, and as such invalid. (Art. 6008; 31-A Tex.Jur. 645, Sec. 383).

(2) The obligation to pay royalties, either in money or in kind, is a matter which is resolved in the contract between the lessor and the lessee.

Judge Smedley described the contractual relationship arising under an oil and gas lease as follows, in Tennant v. Dunn, 130 Tex. 285, 110 S.W.2d 53 (1937):

"The parties to a contract may agree upon a standard of value, and they are bound by such agreement unless the standard fails."

To the extent, therefore, that the lease contracts call for royalty payment of the gas in kind, this is a contractual obligation between the parties subject to appropriate enforcement as such. If such contracts do not embody provisions calling for royalty payments in kind, there is no authority for the Commission to alter, amend or abrogate these contractual provisions by administrative fiat, and for the Commission to attempt to do so would raise serious constitutional questions.

(3)(4) We group your third and fourth questions because they pertain to the single issue of whether the Commission can issue an order providing that either an operator or a pipeline company delivering gas for irrigation fuel pump use would not become a gas utility as a result of such action.

Since the definition of a "gas utility" is technically prescribed by law in Art. 6050, the Commission is without authority to issue an order relieving an operator or a pipeline from inclusion within the statute, as there is no discretion reposed in the Commission in this regard. Whether or not an operator or a pipeline is within the statutory classification of a "gas utility" as defined in Art. 6050, requires the examination and resolution of the facts in each instance. Our determination of whether or not the actions in question would legally classify the operators or the pipelines as "gas utilities", within the contemplation of Art. 6050, et seq., has not been asked, and our answer would depend upon an examination of all of the circumstances involved in the complete operation. Of course, irrespective of such determination, the statutory definition of a "gas utility" prescribed by the Legislature could clearly be amended to provide a specific exception for the operations described in your request.

## SUMMARY

The Railroad Commission does not have authority to issue an order requiring that a certain portion of natural gas production from the Texas Hugoton Field shall be dedicated to the specific surface use of fuel for irrigation pumps, and the Commission cannot order that such production shall not be charged against the appropriate allowable. Whether a royalty owner may take his gas royalty in kind is a contractual obligation to be negotiated between the contracting parties. Whether or not the act of delivering gas from a gas well or from a pipeline constitutes such deliverer a "gas utility" is to be determined by the statutory definition prescribed in Art. 6050.

APPROVED:

Willis E. Gresham
Reviewer

W. V.  Geppert
Reviewer

Robert S. Trotti
First Assistant

Yours very truly,

JOHN BEN SHEPPERD
Attorney General of Texas

By  Dean J. Capp
         Assistant