ESTATE OF NONA H. BABBITT, DECEASED, PHYLLIS B. ANDERSON AND ALVIN E. BABBITT, INDEPENDENT EXECUTORS, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 36998-84.          Filed December 4, 1986.

*Al Schulman*, for the petitioner.
*David B. Mora*, for the respondent.

FEATHERSTON, *Judge*: Respondent determined a deficiency in the amount of $45,557 in petitioner's estate tax. After concessions, the only issue for decision is whether decedent transferred during her lifetime 16 interests of $3,000 each in her residence to her 16 children and grandchildren which are includable in her gross estate under section 2035(a).[1]

FINDINGS OF FACT

Decedent Nona H. Babbitt (hereinafter decedent) died on December 15, 1980. The executors of her estate are Alvin E. Babbitt (Alvin) and Phyllis B. Anderson (Phyllis). At the time the petition was filed, Phyllis resided in Spring, Texas, and Alvin lived in Houston, Texas. Decedent's estate (petitioner) filed a Federal estate tax return with the Internal Revenue Service Center, Austin, Texas, on or about September 1, 1981.

---

[1] All section references are to the Internal Revenue Code of 1954 as in effect on the date of decedent's death, unless otherwise noted.

Prior to August 1980, decedent owned and lived in a residence at 10026 Bob White, Houston, Texas (residence). On August 18, 1980, decedent was hospitalized and learned that she had terminal cancer. After staying at the hospital for 9 or 10 days, decedent moved in with Phyllis, her daughter, and lived in Phyllis' home until her death. Decedent removed most of her personal effects from the residence, but left the furniture in the house. She never returned to live in the residence.

Decedent paid the utilities and other expenses of the residence up to the date of her death. Decedent's Federal income tax return for 1980 reflects a deduction for property taxes for the calendar year 1980 paid by petitioner.

On or about September 1, 1980, the residence was offered for sale by decedent by placing a "for sale by owner" sign on the property. The residence was listed with a real estate agent on or about September 15, 1980. The residence was eventually sold on February 19, 1983, for $62,000.

On September 11, 1980, decedent, accompanied by Phyllis and Alvin, visited the office of Al Schulman (Schulman), a Houston attorney. On that day, decedent executed her last will and testament and an instrument purporting to transfer as a gift to each of 16 named individuals a $3,000 present interest in the residence (instrument).[2] Each of the 16 individuals named in the instrument was decedent's child or grandchild. The instrument was notarized but not recorded in county land records.

The document was kept at Schulman's office and not delivered to any of the 16 children and grandchildren. Phyllis and Alvin were told in Schulman's office that decedent had made her will and had executed a "deed of 16 $3,000 gifts." They were present when decedent requested that Schulman keep both her will and the instrument in his office.

None of the individuals named in the instrument took possession or control of the residence before decedent's death. Each of the 16 individuals named in the instrument received $3,000 in cash from decedent's estate and executed

[2]Six of the 16 gifts were designated as made under the Uniform Gift to Minors Act, Tex. Rev. Civ. Stat. Ann. art. 5923-101 (Vernon 1962), as amended by Acts 1975, 64th Leg., ch. 582, sec. 2, naming as custodians for the minor donees, Phyllis B. Anderson, Alvin E. Babbitt, and Ronald W. Babbitt.

a document dated April 13, 1981, which purports to be a release of their interests in the residence under the instrument.

Petitioner reported the value of the residence at the date of decedent's death at $75,000 on its estate tax return and claimed a deduction of $48,000 for "Mortgages and Liens." The parties agree that the value of the residence at decedent's date of death was $62,259.[3] Petitioner now contends that its claimed deduction for mortgages and liens was inadvertent.[4]

## OPINION

### 1. *Includability of the $3,000 Interests in Decedent's Estate*

The parties debate at length the question whether the instrument executed by decedent on September 11, 1980, transferred interests in real property under Texas law. Citing *Tennant v. Dunn*, 130 Tex. 285, 110 S.W.2d 53, 58 (1937), and *Standard Oil Co. of Texas v. Marshall*, 265 F.2d 46, 53 (5th Cir. 1959), which hold that an oil payment is an interest in real property, petitioner analogizes the instrument to the conveyance of an oil payment and contends that the instrument conveyed 16 individual present interests in decedent's property. On that ground, petitioner maintains that decedent's gross estate does not include the $48,000 which represents the total value of the 16 inter vivos gifts of $3,000 each. Respondent argues, alternatively, that (1) the instrument lacks the certainty required of a valid deed under Texas law, (2) the instrument was invalid for lack of delivery under Texas law, and (3) if the transfers were complete, they were gifts of future interests made within 3 years of decedent's death and, therefore, includable in decedent's gross estate under section 2035(a).

The parties agree that the Texas courts, apart from the oil and gas cases, have not answered the precise question whether a purported conveyance of an interest in land measured by a dollar amount is sufficient to transfer an interest in real property. Our own research has disclosed no

---

[3]The parties have stipulated that petitioner is entitled to a deduction of $4,729 for the cost of selling the property.

[4]No deduction would be allowable for the transfers on the theory that they created claims against the estate because the donees gave no consideration therefor. Sec. 2053(c)(1)(A).

definitive answer by the Texas courts. We find it unnecessary, however, to answer the question here.

Assuming, without deciding, that the September 11, 1980, instrument transferred real property interests to decedent's children and grandchildren, the transfers were made within 3 years of the date of decedent's death on December 15, 1980. Section 2035(a)[5] provides that "Except as provided in subsection (b)" of that section, the value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent made a transfer "during the 3-year period ending on the date of the decedent's death." The 16 transfers, made only about 3 months before decedent died, are thus includable in decedent's gross estate unless they fall within the exception provided in section 2035(b).

Insofar as it is here applicable, section 2035(b) provides that the foregoing 3-year general rule does not apply to any gift to a donee if the decedent was not required by section 6019 to file a gift tax return for such year with respect to gifts to that donee. Section 6019(a)[6] provides that any individual who in any calendar quarter makes any transfer by gift, other than a transfer which under section 2503(b) is not to be included in the total amount of gifts for such quarter shall make a gift tax return. Section 2503(b)[7] provides, in part, that in the case of "gifts (other than gifts of future interests in property)" made to any person by the donor, the first $3,000 of such gifts to such person shall not

---

[5]SEC. 2035. ADJUSTMENTS FOR GIFTS MADE WITHIN 3 YEARS OF DECEDENT'S DEATH.

(a) INCLUSION OF GIFTS MADE BY DECEDENT.—Except as provided in subsection (b), the value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, during the 3-year period ending on the date of the decedent's death.

[6]SEC. 6019. GIFT TAX RETURNS.

(a) IN GENERAL.—Any individual who in any calendar quarter makes any transfers by gift (other than transfers which under section 2503(b) are not to be included in the total amount of gifts for such quarter and other than qualified charitable transfers) shall make a return for such quarter with respect to the gift tax imposed by subtitle B.

[7]SEC. 2503. TAXABLE GIFTS.

(b) In computing taxable gifts for the calendar quarter, in the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1971 and subsequent calendar years, $3,000 of such gifts to such person less the aggregate of the amounts of such gifts to such person during all preceding calendar quarters of the calendar year shall not, for purposes of subsection (a), be included in the total amount of gifts made during such quarter. * * *

be included in the total amount of gifts made during the calendar quarter (annual exclusion).

The question, then, is whether, assuming that decedent on September 11, 1980, made a valid transfer of interests in her residence to her children and grandchildren, the interests so transferred were present or future interests. If we find that decedent's gifts of $3,000 interests were gifts of future rather than present interests, the gifts would not qualify for the annual exclusion and, because they were made within 3 years before her death, the gifts would be includable in decedent's gross estate under section 2035(a). If the gifts were of present interests, they would qualify for the annual exclusion and would not be includable in decedent's estate.

The regulations under section 2503 define future interests as follows (sec. 25.2503-3(a), Estate and Gift Tax Regs.):

"Future interests" is a legal term, and includes reversions, remainders, and other interests or estates, whether vested or contingent, and whether or not supported by a particular interest or estate, which are limited to commence in use, possession or enjoyment at some future date or time. * * *

The regulation further provides (sec. 25.2503-3(b), Estate and Gift Tax Regs.):

An unrestricted right to the immediate use, possession, or enjoyment of property or the income from property (such as a life estate or term certain) is a present interest in property. * * *

This definition has been adopted by the Supreme Court. *Commissioner v. Disston*, 325 U.S. 442, 446 (1945). The present right to use, possess, or enjoy the property, not the mere vesting of a legal right or title to the property, identifies a present interest for purposes of the annual exclusion from the gift tax. *Fondren v. Commissioner*, 324 U.S. 18, 20-21 (1945); *Hamilton v. United States*, 553 F.2d 1216, 1218 (9th Cir. 1977). "The question is of time, not when title vests, but when enjoyment begins." *Fondren v. Commissioner, supra* at 20.

Under this standard, the interests decedent conveyed to her 16 children and grandchildren were future interests within the meaning of section 2503(b). Nothing in the record

reveals an intention on decedent's part that the 16 donees have possession or other present use of the residence. None of the 16 individuals occupied or attempted to occupy the residence before it was sold. There is no evidence that any donee other than Phyllis and Alvin was even aware that the gift had been made. Indeed, petitioner states in his brief that both Phyllis and Alvin were seeking to assist in selling the residence, and "it was contemplated that the proceeds of the sale would be used to redeem and obtain releases of the sixteen $3,000.00 gifts and that the balance of the money would be paid to the Decedent."[8] The inference is that decedent intended merely to convey 16 $3,000 interests in the proceeds from the sale of her residence. Support for this inference is found in the retention of the instrument in Schulman's office and the failure to record it in the appropriate land records.

To an owner of an interest in proceeds from a future sale, enjoyment of the property is postponed until the property is sold. It is the postponement of the enjoyment of the gift that brands it as a future interest. *Fondren v. Commissioner*, 324 U.S. at 20-21. "If the donee does not have the right to immediate possession or enjoyment, his interest is a future interest even though possession or enjoyment is deferred for only a short time." *Hamilton v. United States*, 553 F.2d at 1218.

Again assuming the validity of petitioner's analogy of the 16 $3,000 interests in decedent's residence to oil payments under Texas law, our conclusion that the $3,000 interests were future interests under section 2503(b) is confirmed by the character of an oil payment. According to the Texas Supreme Court, an oil payment is a real property interest but it is not a possessory interest under Texas law; rather it is an incorporeal hereditament[9]—an entitlement to a share of the oil or its proceeds if, as, and when oil is produced. *Tennant v. Dunn*, 130 Tex. 285, 110 S.W.2d 53 (1937); *State v. Quintana Petroleum Co.*, 134 Tex. 179, 133

---

[8]Petitioner's trial counsel prepared the Sept. 11, 1980, instrument. In his opening statement, he explained that the plan was for decedent to sell the house as soon as possible, for each of the 16 donees to obtain his or her share of the proceeds, and for decedent to receive the remainder.

[9]An "incorporeal hereditament" is defined as "anything, the subject of property, which is inheritable and not tangible or visible." Black's Law Dictionary (5th ed. 1979).

S.W.2d 112 (1939).[10] As stated in *Belgam Oil Co. v. Wirt Franklin Petroleum Corp.*, 209 S.W.2d 376, 380 (Tex. Civ. App. 1948), "owners of the overriding royalties [which are similar to oil payments] do not have the right of possession or the right to share in the possession under the lease." Contrary to one of petitioner's arguments, the 16 donees could not have maintained a partition suit because owners of nonpossessory interests in Texas real property have no right to demand partition of the property. *Douglas v. Butcher* 272 S.W.2d 553, 555 (Tex. Civ. App. 1954); see Texas Prop. Code Ann. sec. 23.001 (Vernon 1984); *Standard Oil Co. of Texas v. Marshall*, 265 F.2d 46, 54 (5th Cir. 1959).

Because the sixteen $3,000 interests in decedent's residence did not entitle the children and grandchildren to immediate use, possession, or enjoyment of the property, such interests were future interests within the meaning of section 2503(b). Sec. 25.2503-3, Estate and Gift Tax Regs. Even if valid interests in real property, they are nonetheless includable in decedent's gross estate under section 2035(a).[11]

## 2. *Valuation of Decedent's Residence*

The parties have stipulated that the fair market value of decedent's residence on her date of death was $62,259.

---

[10]The three most commonly used terms to describe partial interests in oil and gas properties were defined by the Texas Court of Appeals as follows (*Knight v. Chicago Corp.*, 183 S.W.2d 666, 670 (Tex. Civ. App. 1944), affd. 144 Tex. 98, 188 S.W.2d 564 (1945)):

"We think the terms undivided interest, overriding royalties and oil payments have certain well defined meanings in Texas. All three types of interest are carved out of and constitute a part of the working interest created by an oil and gas lease. An overriding royalty is a certain percentage of the working interest which as between the lessee and the assignee is not charged with the cost of development or production. The oil payment is similar to the overriding royalty, except that the interest of the assignee ceases upon his receiving a certain amount of money or value out of oil or gas produced from a certain percentage of the working interest. The interest commonly spoken of as an "undivided interest" is an undivided percentage of the working interest, which differs from the oil payment or the overriding royalty in that it is chargeable with its pro tanto share of the cost of development and production."

[11]As stated in note 2 *supra*, 6 of the 16 gifts were made to minors. Sec. 2503(c) provides a "safe harbor" rule for future interest gifts to minors. See *Herr v. Commissioner*, 35 T.C. 732 (1961), affd. 303 F.2d 780 (3d Cir. 1962). Under that rule no part of a gift to an individual who has not attained the age of 21 years shall be considered a gift of a future interest for purposes of sec. 2503(b) if the property and the income therefrom "may be expended by, or for the benefit of, the donee before his attaining the age of 21 years" and meets certain other requirements. For the reasons discussed in the text, the gifts of future interests in this case could not be expended until decedent's residence was sold and that could have occurred after the minors had reached 21 years of age; therefore, the gifts did not meet the requirements of sec. 2503(c). Although the Sept. 11, 1980, instrument designates a custodian for each of the gifts to the six minors under the Uniform Gifts to Minors Act, such designations do not bring the gifts within sec. 2503(c), and they are includable in decedent's gross estate under sec. 2035(a). See generally Rev. Rul. 59-357, 1959-2 C.B. 212.

Because we have concluded that the sixteen $3,000 gifts were, at best, transfers of future interests made within 3 years of decedent's death, the value of those transfers, as well as the value of the interest decedent retained, is included in decedent's gross estate under section 2035(a). Accordingly, the full $62,259 is includable in her gross estate.

Petitioner first contends that the value of decedent's residence included in her gross estate should be discounted because decedent transferred to her children and grandchildren fractional interests in the property, and all of the fractional interests, even if includable in decedent's gross estate, have less value than an entire undivided interest, relying on *Propstra v. United States*, 680 F.2d 1248 (9th Cir. 1982). See also *Estate of Bright v. United States*, 658 F.2d 999 (5th Cir. 1981). In the *Propstra* case, on a motion for summary judgment, the court found sufficient evidence that the value of an undivided fractional interest in real property included in the gross estate was less than a proportionate share of the fair market value of the whole. 680 F.2d at 1253.

The *Propstra* case is inapposite to the instant circumstances. In this case, the entire value of decedent's residence, including the value of the conveyances made within 3 years of decedent's death and brought back into her gross estate under section 2035(a), is included in her gross estate, not undivided fractional interests in the property. The purpose in valuing interests included in the gross estate under section 2035(a) at the date of decedent's death is to "make the transferred property cause the same tax result as if the decedent had kept it till he died instead of transferring it." *Humphrey's Estate v. Commissioner*, 162 F.2d 1, 2 (5th Cir. 1947). If decedent had retained the 16 $3,000 interests until she died, she would have owned a fee simple interest in her residence includable in her estate in its entirety under section 2033 at the stipulated fair market value of $62,259. The application of section 2035(a) to the instant facts should not change that tax result.

Petitioner next contends that the September 11, 1980, instrument created a cloud on the title of decedent's residence under Texas law for which the value of the

residence should be discounted. A cloud on title has been defined as—

a semblance of title, either legal or equitable, which is, in fact, invalid or would be inequitable to enforce. In other words, a cloud on title is an outstanding claim or encumbrance apparently valid, but is in fact, invalid. * * *

*Vanguard Equities, Inc. v. Sellers*, 587 S.W.2d 521, 525 (Tex. Civ. App. 1979). We have assumed, for purposes of our analysis, that the instrument conveyed valid interests in property; therefore, the interests held by decedent's 16 children and grandchildren did not constitute a cloud on title under Texas law.

The standard applied for determining the fair market value of property interests for Federal estate tax purposes is the price at which the property would change hands between a willing buyer and a willing seller, both with knowledge of the relevant facts. Sec. 20.2031-1(b), Estate and Gift Tax Regs.; *Estate of Robinson v. Commissioner*, 69 T.C. 222, 224 (1977). A willing buyer with knowledge of the relevant facts would be aware that the scheme here involved was designed to pass $3,000 to each of the 16 individuals, that the instrument was not, and was not intended to be, recorded, and that upon the purchase of the property and distribution of the $3,000 gifts the 16 interests would vanish. The instrument would not, therefore, affect the value of the property.

Furthermore, petitioner has presented no expert testimony or any other evidence of valuation tending to show that a willing buyer would not purchase the residence at its stipulated fair market value without a discount factor, nor is there any evidence as to what the discount should be even if one were appropriate.[12]

In summary, for purposes of our analysis, we have assumed that the September 11, 1980, instrument transferred valid real property interests in decedent's residence analogous to oil payment rights.[13] The interests created were future, rather than present, interests, not qualifying for the annual gift tax exclusion under section 2503(b). As

---

[12]See *Estate of Iacono v. Commissioner*, T.C. Memo. 1980-520.

[13]In assuming that the instrument transferred valid property interests under Texas law, we have not reached the merits of respondent's other arguments and we see no need to do so.

such, they are includable in decedent's estate under section 2035(a) as transfers made within 3 years of decedent's death. The value of decedent's residence is to be included in her gross estate at its stipulated fair market value of $62,259, not discounted by reason of the conveyances.

To reflect the foregoing,

*Decision will be entered under Rule 155.*